**Robert A. WARR, et al., Plaintiffs,**

v.

**Earl L. BUTZ, Secretary of Agriculture of the United States, and W. E. Barmore, State Executive Director, South Carolina State Agricultural Stabilization and Conservation Service, Defendants.**

**Civ. A. No. 74–714.**

United States District Court,
D. South Carolina,
Florence Division.

June 20, 1974.

D. Laurence McIntosh, Florence, S. C., for plaintiffs.

Daniel Fulton, Asst. U. S. Atty., Columbia, S. C., Edward Silverstein, John C. Chernauskas, Helen E. Lutzen, John A. Harris, U. S. Dept. of Agriculture, Washington, D. C., for defendants.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court under a Rule to Show Cause dated May 29, 1974 directing defendants to appear and show cause why they should not be temporarily and permanently enjoined from enforcing a recently enacted regulation of the Secretary of Agriculture regarding the marketing of tobacco.

The defendants have moved to dismiss the action on the ground that the Court lacks jurisdiction of the matter and the complaint fails to state a claim upon which relief can be granted; or in the alternative, for summary judgment on the ground that there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law.

The plaintiffs Robert A. Warr, Preston Warr and N. C. Newman are owners and operators of tobacco warehouses in Lamar, South Carolina. The plaintiffs Mot-

ley, Goad, Windham, Evans, Howard, Jackson, David Godwin, Carl Godwin, T. L. Bert, Lee and Barefoot are farmers and producers of flue cured tobacco in North and South Carolina.

The defendant Butz is the duly appointed and acting Secretary of Agriculture for the United States and defendant Barmore is the duly appointed and acting Director of the South Carolina State Agricultural Stabilization and Conservation Service. The defendants are responsible for carrying out the regulations of the Department of Agriculture.

From prior litigation, this Court has knowledge of many of the tobacco marketing problems in the tobacco belts of North and South Carolina. Each summer seems to bring a new group of cases by farmers, warehousemen or others regarding the allocation of selling time at the warehouse, the assignment of Government graders and inspectors, requests for extension of time at various warehouses and numerous other problems peculiar to this segment of agriculture and industry.

It is well known that disorderly marketing has presented serious problems for farmers and producers of flue cured tobacco in the Carolinas, Virginia, Georgia and Florida. Marketing begins with the opening of the Florida and Georgia warehouses and markets and thereafter at intervals of one to two weeks the markets open in the more northern areas until by September the quantity of flue cured tobacco ready for marketing far exceeds the quantity that can be handled by the processing facilities of the tobacco and cigarette companies, who buy most of the output. Since tobacco may spoil if it is not processed soon after being purchased, the buyers generally do not purchase tobacco at normal price levels at a rate faster than the buyers can process such tobacco as it is received at their respective plants.

The marketing of tobacco is further complicated by the fact that the auction market cannot operate without Govern-

ment tobacco graders assigned to the markets by the Secretary under authority of the Tobacco Inspection Act, 7 U.S.C. Sec. 511 et seq. The Secretary has a problem to allocate graders in an efficient manner, since there are insufficient graders to service all sales markets simultaneously. As a result the Secretary has been required to use his discretion in making a choice between the markets to be served at a given time, and in order to accomplish this the Secretary must know when and where the farmers desire to sell their tobacco.

In 1967 an industrywide Flue Cured Tobacco Marketing Committee was formed with the advice and guidance of the Secretary of Agriculture and the Commissioners of Agriculture of those states producing flue cured tobacco for the purpose of preparing recommended plans each year for the opening, operating and closing of markets in the various flue cured tobacco belts. The Secretary has usually followed the recommendations of the Committee in providing tobacco inspection and grading services.

The marketing system has been effective in curing certain ills, but has not alleviated all the problems of the producers in marketing their tobacco. One of the primary problems is that producers in more northern states transport many millions of pounds of tobacco to the earlier markets in the southern tobacco belts thereby displacing local producers from their regional auction warehouses or causing long waits and delays in the sale of tobacco once the producer has brought it to the warehouse. As a result of this and other problems, producers have sought remedies in courts, as mentioned above, often asking the court to mandamus the Secretary and require him to assign additional graders or extend the sales time at warehouses in certain areas. Also producers have on occasion not been able to obtain price support protection if the markets become so crowded that they cannot sell through the normal channels due to lack of warehouse floor space or insufficient number of graders.

The industry began an effort to solve this problem two years ago by encouraging warehouses to "book" or make appointments with producers in advance for marketing their tobacco on a certain day. The entire marketing process must be timed and handled carefully to prevent the spoilage of tobacco and keeping in mind the fact that the tobacco companies will not purchase faster than they can process and it would serve no purpose for the Government to assign more graders and inspectors to an area than are required to grade that amount of tobacco that the tobacco companies will buy and can process in a given period of time.

This year, the Secretary adopted the regulation which is now under attack. This regulation limits the availability of price supports for flue cured tobacco to the tobacco sold at warehouses within 100 miles of the county seat of the county in which the producer's farm is located and requires the producer to designate the warehouse or warehouses to be used by him in advance. The Secretary asserts that such action is necessary to assure that the local producers in the vicinity of the early markets will be able to secure marketing facilities in these areas without the inconvenience and cost of long waits for the sale of their tobacco and to avoid the possibility that some producers may have to forego price support protection entirely and sell off of the regular approved and inspected markets. If producers designate in advance the warehouse or warehouses to be used for marketing their product, then federal graders and inspectors may be assigned more efficiently, markets may be opened on earlier dates in the northern areas and it will not be necessary for producers in the northern areas to flood to the southern markets with their crop.

The regulation now challenged by the plaintiffs was published in the Federal Register on May 20, 1974, 39 F.R. 17753 and Section 1464.2(ii) provides in pertinent part as follows:

"(ii) Producer designation of warehouses. Producers will be required, as a condition of price support, to desig-

nate the warehouses at which they will market their tobacco. Such designations may be at any warehouse or warehouses in any market within a radius of 100 miles from the county seat of the county in which the farm is located. . . . A producer may obtain price support only in a warehouse he has designated, and at such warehouse only with respect to the quantity of tobacco he designated for sale at such warehouse."

The foregoing regulation was issued pursuant to the Tobacco Inspection Act, 7 U.S.C. § 511 et seq., the Commodity Credit Corporation Charter Act, 15 U.S.C. § 714 et seq. and the Agricultural Act of 1949, 7 U.S.C. § 1421 et seq. Previous notice of intent to amend parts 29 and 1464 of Title 7 of the Code of Federal Regulations was published in the Federal Register for April 10, 1974, 39 F.R. 13008. Interested persons were afforded opportunity to file written data, views, arguments and objections in connection with the proposals. The plaintiffs in this case testified that they did not take advantage of this opportunity. After considering the relevant material and data, the Secretary concluded that these sections should be amended and did so by publication of the regulation now in dispute.

Plaintiffs contend that this regulation requiring prior designation of a warehouse within a given area has substantially altered the usual and customary channels, facilities and arrangements of trade and commerce for flue cured tobacco. The warehousemen contend that the effect of the regulation will be to reduce the amount of tobacco sold at their warehouses by farmers from North Carolina and cause them serious financial harm. The plaintiff farmers assert that the effect of the regulation not to make price supports available except at designated warehouses will restrict the markets where they may sell their tobacco. One farmer stated that he was being discriminated against, but could not explain how he was being treated any differently

from other farmers and producers under the ruling.

All plaintiffs argue that in limiting or restricting the tobacco market, the Secretary had exceeded the scope of his authority and arbitrarily abused his discretion by assuming legislative functions which are reserved to the Congress.

This matter came on to be heard at Columbia, South Carolina on June 13, 1974. Plaintiffs presented live testimony on the question of preliminary relief and counsel for all parties advised the Court that they had no further evidence by affidavit or otherwise on the motion to dismiss or for summary judgment. At the conclusion of the hearing, the Court orally denied the preliminary relief and granted summary judgment in favor of the defendants, but advised counsel that a written order would be issued.

It was interesting to note that the suit seemed to be for the primary benefit of the warehousemen, since certain of the farmers-plaintiffs indicated that they were not sharing in the expense of the litigation and one testified that he had been in the litigation from the beginning, since he first learned of it in the newspaper. Obviously the newspaper report appeared after the suit was brought and the papers were filed in the office of the clerk.

■ It is well settled that four factors should be considered by a Court prior to granting the extraordinary relief of a preliminary injunction. These are: (1) a substantial likelihood that the moving party will prevail on the merits; (2) that the moving party will be irreparably injured if the preliminary relief is not granted; (3) that the public interest will be served by granting the injunction and (4) the harm possibly resulting to other parties in the proceedings. Allison v. Froehlke, 470 F.2d 1123 (5th Cir. 1972); Long v. Robinson, 432 F.2d 977 (4th Cir. 1970).

■ The warehousemen-plaintiffs testified that they will suffer financial losses if the Secretary is allowed to imple-

ment the regulation, but they fail to offer any statistical proof to show that their losses in tobacco sales from more than a 100 miles distance would not be offset by increased sales from local producers, who are required under the regulation to market their tobacco closer to home. Robert Warr testified that there was approximately 250,000,000 pounds of tobacco within 100 miles of his warehouse, and the testimony from other plaintiffs indicated that already farmers are being contacted by a number of warehousemen seeking their business. Competition among the warehouses for business will increase the service available to the farmers, will require the warehouses to be operated in a more efficient manner and more conscious to the needs of the farmers and the prevention of delay in selling the product once it arrives at the warehouse. The plaintiff-farmers could show no real damage that they might incur as a result of the new regulation. Most of the farmers testified that they felt they should be able to sell their tobacco anywhere and anytime they choose without being required to designate in advance a given warehouse or restricted to the 100 mile radius. Under the regulation they are still free to sell any time and any place they desire, so long as they are willing to assume the risk of selling at any price and forego the security of price supports. However, they insist upon price supports with "no strings attached". The Court concludes that none of the plaintiffs, warehousemen or farmers have shown that they will be damaged, irreparably or otherwise, if the injunction is not granted.

There was absolutely no evidence offered to show that the public interest will be served by granting the plaintiffs' request for an injunction. On the contrary, the affidavits submitted by the defendants indicate that the regulation is designed to provide reasonable and equitable access to the auction floor of warehouses and price supports for all concerned. The public interest would be best served by allowing the Secretary to attempt, by this regulation, to accomplish more orderly marketing of flue cured tobacco. This is a problem of the Secretary and those persons interested in tobacco and should be handled by them and not submitted each summer to the courts. The Secretary and other farmers, warehousemen and persons interested in tobacco marketing would be substantially damaged by issuance of a preliminary injunction at this late date. To enjoin the Secretary in the present case from implementing a properly enacted regulation would have the effect of frustrating his efforts to achieve a more stable and orderly market.

The question which normally perplexes Courts on a motion for preliminary relief is the likelihood of a party prevailing on the merits. The present case does not present a difficult problem in this regard. Resolution of this question requires the Court to determine: (1) whether the action taken by the Secretary in implementing the regulation here in question is within agency discretion and (2) whether the regulation issued is reasonable and not arbitrary or capricious.

Section 5 of the Tobacco Inspection Act, 7 U.S.C. § 511d, limits the Secretary only to the obligation of first designating "auction markets where the greatest numbers of growers may be served with the facilities available to him". Section 14 of the Act authorizes the Secretary to issue rules and regulations he may deem necessary to effect the purposes of the Act. Obviously the Secretary has broad authority to utilize his discretion in determining arrangements for tobacco inspection.

The Administrative Procedure Act, 5 U.S.C. § 701 et seq. provides for judicial review of agency action, however an exception is provided at 701(a)(2) which provides that the Act does not apply to the extent that "agency action is committed to agency discretion by law." See the case of Panama Canal Co. v. Grace Line, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed. 2d 788 (1958) where the Supreme Court

laid down the general rule regarding the Administrative Procedure Act and the aforementioned exclusion and stated that judicial relief may be available "where a statute creates a duty to act and an equity court is asked to compel the agency to take the prescribed action" but not "where the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms. . . ." In those situations, the Supreme Court stated that "the decision to act or not to act is left to the expertise of the agency burdened with the responsibility for decision." See also Sierra Club et al. v. Hickle, 467 F.2d 1048 (6th Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1545, 36 L.Ed.2d 313 (1973). The general rule as set forth in the *Panama Canal Co.* case has been followed in matters dealing with the tobacco market. In Lazar v. Benson 156 F.Supp. 259 (E.D. S.C.1957) the Court dismissed the complaint finding that identification on the warehouse floor of the standard varieties of tobacco was "a proper and necessary use" of the Secretary's responsibility under the Agricultural Act of 1949 to determine or approve the terms and conditions of price support operations.

■ This Court concludes that the action of the Secretary of Agriculture in implementing the regulation under attack is one well within the discretion of the agency and thus not subject to judicial review. Moreover, the Court cannot understand how the plaintiffs in good conscience contend that the Secretary can provide such benefits as price supports, but not be allowed to prescribe reasonable terms and conditions under which such benefits are available. Plaintiff-farmers choose to ignore the fact that they can always elect to forego the security of price supports and market their tobacco in the open marketplace.

■ As to the reasonable or arbitrary effect of the new regulation, the affidavits submitted by the defendants and uncontroverted by the plaintiffs show: (1) disorderly marketing conditions exist in the flue cured tobacco industry because the early southern markets tend to become glutted with tobacco transported from more northern areas for marketing in competition with tobacco grown locally to the detriment of southern producers; (2) in recent years efforts have been made through the assignment of graders to alleviate this problem, and while these efforts have been successful to some degree, they have also been abused by some warehousemen who have first marketed tobacco which has been transported to their areas of production prior to handling tobacco of local producers; and (3) in order to develop marketing practices which will tend to correct these abuses and permit more producers in all areas to receive the market protection afforded them by law under the price support legislation, the Secretary has concluded that price support should be made available only in warehouses within 100 miles of the county seat of the county of production.

All tobacco producers and warehousemen are treated equally under the regulation. A producer is permitted to select more than one warehouse within his marketing area and still receive price supports for the tobacco sold. A system of advance designation of warehouses by producers will benefit both producers and warehousemen by allowing for more efficient assignment of Government inspectors and graders. The regulation as contemplated by the Secretary should go far in curtailing many of the present problems in the marketing of flue cured tobacco. Accordingly, the Court finds that there is absolutely no showing of arbitrariness or abuse of discretion on the part of the Secretary.

The Court further concludes that the plaintiffs have failed to show proof of any of the four essential elements necessary to obtain temporary relief and there is no dispute as to any material fact to be determined by a trial of this matter on its merits.

It is, therefore, ordered that the application of the plaintiffs for a preliminary

and temporary injunction be and the same is hereby denied; and

It is futher ordered that summary judgment be entered for the defendants and that the complaint be dismissed with costs to the defendants.

And it is so ordered.