**Iluminada REYES et al., Plaintiffs,**

v.

**Ann KLEIN, Individually and in her capacity as Commissioner of the Department of Institutions and Agencies of the State of New Jersey, et al., Defendants.**

Civ. A. No. 75–1436.

United States District Court,
D. New Jersey.

April 13, 1976.

1242

Marc Finkelstein, Legal Aid Society of Mercer County, Trenton, N. J., and Roger A. Schwartz, New York City, for plaintiffs.

William F. Hyland, Atty. Gen. of N. J., Trenton, N. J. by Michael S. Bokar, Deputy Atty. Gen., Trenton, N. J., for defendants.

## MEMORANDUM

CLARKSON S. FISHER, District Judge.

This matter comes before this court on plaintiffs' motion for partial summary judgment and for class action certification. Plaintiffs have filed a six count complaint against Ann Klein, the Commissioner of the Department of Institutions and Agencies of the State of New Jersey, Thomas Riti, Director of the Division of Public Welfare of the State of New Jersey and William Robinson, Supervisor of the State Food Office in the Bureau of Local Operations, Division of Public Welfare. These defendants are sued in their individual and official capacities. By this motion plaintiffs seek summary judgment as to Count 1. Specifically, plaintiffs seek declaratory and injunctive relief from the failure of State officials to enforce and comply with certain federal require-

ments pertaining to the Food Stamp Program.[1] Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1337 and 1343. This court assumes jurisdiction under 28 U.S.C. § 1337.[2]

Having found that:

" . . . the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households,"

and that

" . . . the Nation's abundance of food should be utilized cooperatively by the States, the Federal Government, local governmental units, and other agencies to safeguard the health and well-being of the Nation's population . . . ,"

7 U.S.C. § 2011, Congress enacted The Food Stamp Act in 1964. Section 2013(c) of the Act authorizes the Secretary of Agriculture to issue regulations for the effective and efficient administration of the program. The dispute in the instant matter stems from 7 U.S.C. § 2016 and the regulations and instructions issued in connection therewith. Section 2016(a) states, *inter alia*:

"[t]he face value of the coupon allotment which State agencies shall be authorized to issue to any households certified as eligible to participate in the food stamp program shall be in such amount as the Secretary determines to be the cost of a nutritionally adequate diet . . . ."

Section 1216(b) states, *inter alia*:

"[t]hat the Secretary shall provide a *reasonable opportunity* for any eligible household to elect to be issued a coupon allotment having a face value which is less than the face value of the coupon allotment authorized to be issued to them under subsection (a) of this section. The charge to be paid by eligible households electing to exercise the option set forth in this subsection shall be an amount which

1. See 28 U.S.C. §§ 2201 and 2202.

2. This Court need not determine whether it has jurisdiction under 28 U.S.C. § 1331(a). This Court does not have jurisdiction under § 1343

as this is not a Civil Rights action. See, *Randall v. Goldmark,* 495 F.2d 356 (1st Cir. 1974), and *Silva v. East Providence Housing Auth.,* 390 F.Supp. 691 (D.R.I.1975).

bears the same ratio to the amount which would have been charged under subsection (b) of this section as the face value of the coupon allotment actually issued to them bears to the face value of the coupon allotment that would have been issued to them under subsection (a) of this section." (Emphasis added).

The participants receive their coupon allotment by obtaining an ATP (Authorization to Purchase) card from the local Food Stamp Office and exchanging it at Food Stamp outlets (banks in New Jersey). On July 29, 1971, the Secretary promulgated regulations in line with the above statutes. 7 C.F.R. § 271.6(d) states:

"(3) The State agency shall, within the limits of the frequency of issuance available to the household under subparagraph (4) of this paragraph, permit any eligible household . . . to elect at the time of issuance to receive a coupon allotment having a face value of all, three-quarters, one-half or one-quarter of the monthly coupon allotment authorized in accordance with § 271.5, and to have such household pay an amount that shall be in the same ratio to the total purchase requirement as the coupon allotment chosen is to the total monthly coupon allotment. (4) The State agency shall insure that eligible households are offered the frequency of coupon issuance that is best geared to the frequency of their receipt of income: *Provided,* That at a minimum, all project areas shall make provision for a monthly and semi-monthly schedule of issuance: *Provided further,* That, the State agency shall insure that each eligible household is offered the option at the time of certification of choosing to receive coupons on a semi-monthly basis."

(The election offered in (3) above is hereinafter referred to as the "variable purchase option".)

Following the promulgation of these regulations, the Food and Nutrition Service of the Department of Agriculture issued an administrative instruction entitled Implementation of Variable Purchase in an ATP Card System. See FNS Instr. 734–6 IV and VI.[3] These instructions require the variable purchase options be listed on the ATP cards. On April 11, 1975, 7 C.F.R. § 271.6(d)(3) was amended, adding the following language:

"The State agency shall require that, as soon as possible but not later than July 1, 1975, the variable purchase ATP card used to implement this provision provide a signature space for each variable purchase option available to the household."

Plaintiff Joseph Colan of Glassboro submitted a signed application for food stamps at an interview with a food stamp certifier on March 12, 1975. At this interview he requested that his ATP cards be issued semi-monthly. On March 15, 1975 plaintiff received his first ATP card representing an entire monthly allotment rather than the semi-monthly allotment requested. Plaintiff had until March 20, 1975 to pay $95 for $154 worth of food stamps. He was unable to secure the entire amount of funds necessary until March 24th. (See Affidavit of Joseph Colan).

Plaintiff Jenny Gonzales of Trenton received her semi-monthly ATP cards on May 8, 1975 and proceeded to exchange one card receiving $144 worth of food stamps for $103.50. Her second ATP card could only be used between May 11 and May 20. Plaintiff received her pay checks on May 9,

---

**3.** The Food and Nutrition Service (FNS) of the Department of Agriculture issues instructions to state agencies in the form of The Food Stamp Certification Handbook. These instructions are mandatory unless otherwise stated. Instruction 734–6 IV states:

  A. *Minimum Requirements*
  2. The variable purchase option shall be listed on the ATP card in accordance with the following:

  a. Monthly ATP Cards. All 4 options listed.
  b. Semi-monthly ATP Cards. Each listing two options, one-half and one-quarter.
Instruction VI is the same regarding ATP Cards issued by mail.

1975 and again on May 23, 1975. Due to her income schedule, plaintiff did not have the necessary funds to purchase her second allotment of food stamps between the 11th and 20th of May. On May 14, 1975 plaintiff went to the bank and requested to pay less for a portion of her second allotment of food stamps. The bank refused to permit the plaintiff to purchase less than the allotment provided on the second ATP card and, as a result, the plaintiff was unable to use that card. (See Affidavit of Jenny Gonzales). The banks refusal was consistent with New Jersey's food stamp program. No routinely issued ATP cards in New Jersey list any variable purchase option on the cards themselves. (Plaintiffs' Complaint ¶ 28, admitted Defendants' Answer ¶ 13).

To implement the variable purchase option, the State of New Jersey, with the approval of the Food and Nutrition Service, instituted an "immediate exchange" program. Under this program:

"[t]hose households receiving one card monthly will be afforded the right to immediate exchange of the current month's ATP card for another card, manually issued, bearing 25%, 50% or 75% of the established monthly purchase requirement and coupon allotment for that household. Households receiving two cards monthly (each at 50%) will be afforded the right to immediate exchange of either or both of the cards for an equal number of other cards, manually issued, bearing 25% of the established monthly purchase requirement and coupon allotment for that household.

The above exchanges may be made either by personal presentation and surrender of the original ATP card(s) with request for exchange or by mail submission of the original ATP card(s) with request for exchange."

Food Stamp Plan of Operation for the State of New Jersey, Amendment No. 1, approved by F.N.S. January, 1973. To inform food stamp program participants of this immediate exchange variable purchase option, the State of New Jersey notified each existing user and newly certified recipients by a circular letter explaining how the exchange option works and where to send or bring their ATP card. Another such notice is sent to each recipient on a quarterly basis.[4] See Defendants' Brief, Appendices 1a–8a.

The defendants assert two legal arguments in opposition to plaintiffs' summary judgment motion. The first argument contends that the F.N.S. Instructions requiring the ATP cards to reflect the variable purchase option are invalid as not having complied with the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

Defendants' second argument contends that New Jersey's variable purchase procedure was formally approved by the Department of Agriculture (See Defendants' Brief—Appendices 4a and 5a), and that such approval was proper. This Court will examine each argument.

The Administrative Procedure Act, 5 U.S.C. § 553, provides:

"(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

(1) a military or foreign affairs function . . . ; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

---

4. Both notices are essentially the same. A sample of the quarterly letter is appended to this opinion.

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.
\* \* \*

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

A "rule", within the Act, is defined as " . . . the whole or a part of an agency statement . . . designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ." 5 U.S.C. § 551(4).

In view of the terms of the Act, it would appear that F.N.S. Instructions are excepted from its provisions. These instructions do relate to "public benefits" as provided in § 553(a)(2).

"On July 24, 1971, however, as a result of a recommendation of the Administrative Conference of the United States, USDA promulgated a regulation making the procedural requirements of Section 4 of the APA applicable to all of its rule-making relating to 'public property, loans, grants, benefits, or contracts.' The regulation was effective immediately. 36 Fed.Reg. 13804."

*Rodway v. United States Dept. of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809, 814 (1975).

Thus, the defendants contend that unless the F.N.S. Instruction in issue was promulgated before July 21, 1971, it is invalid and unenforceable as its promulgation was not in compliance with the requirements of the *Administrative Procedure Act.* Although the exact date of issuance is not clear, both parties agree that F.N.S. Instruction 734–6 was promulgated after July 21, 1971 (see Plaintiffs' Supplemental Brief, p. 5). Plaintiffs have not shown that the APA notice requirements were met, and therefore, the Instruction would appear to be invalid.

It is possible, however, that the F.N.S. Instruction is excepted from the APA by another provision. Section 553(b) of the Act excepts "interpretative rules" from its notice requirements. Thus, this Court must decide the issue which the United States Court of Appeals for the Second Circuit did not decide—namely, whether the F.N.S. Instructions are "interpretative rules" within the exception of § 553(b). See, *Tyson v. Maher,* 523 F.2d 972, ft. n. 3 at 974 (2d Cir. 1975). In determining this issue, the existing case law is instructive. In *National Ass'n of Ins. Agts. Inc. v. Board of Govs. of Fed. Reserve System,* 160 U.S.App.D.C. 144, 489 F.2d 1268 (1974), the court said:

"This court long ago recognized the difference, in terms of the necessity for notice and hearing, between regulations having the force of law, on the one hand, and interpretative rules, on the other:

Administrative officials frequently announce their views as to the meaning of regulations. Generally speaking, it seems to be established that 'regulations' . . . are those which create law, usually implementary to an existing law, whereas *interpretative rules are statements as to what the administrative officer thinks the regulation means.*" (Emphasis supplied). [citation omitted]

This difference is also reflected in the Administrative Procedure Act, 5 U.S.C. § 553(b)(3)(A), wherein it is specifically states that the notice and hearing requirements of that statute do not apply to 'interpretative rules.' "

*Id.* at 1270. See, *Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974).[5] In *National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688 (2d Cir. 1975), the court said:

"When adopting a rule that purports to have the force of law, the agency is bound by the procedural requirements of § 4 of the Administrative Procedure Act, 5 U.S.C. § 553. Whatever the term 'interpretive' may mean in other contexts, it seems apparent that the exemption from § 4 requirements provided in 5 U.S.C. § 553(b)(3)(A) for 'interpretive rules' refers only to rules not intended to have the force of law." *Id.* at 698, ft. n. 8.

■ F.N.S. Instruction 734–6 sets forth a specific requirement that the variable purchase option be included on the face of the ATP card—a requirement not contained in prior regulations. Moreover, this instruction, prescribing a single, uniform and specific means of implementing the option, is mandatory. This Court finds that the instruction is intended to have the force of law and as such is not an "interpretative rule" within the exception provided in the APA. Therefore, F.N.S. Instruction 734–6 is invalid and unenforceable.

It must also be noted that neither the 1975 amendment to 7 C.F.R. § 271.6(d)(3), nor the 1975 amendments to the exhibits in F.N.S. Instruction 734–6 IV alter the result. The amended regulation in its final form varied from the proposed form in that the terms "variable purchase" were placed before the words " . . . ATP cards used to implement this provision . . ." According to the Secretary's comment:

"[t]he basis for this change stems from an expression of concern and request for clarification from some states which have implemented variable purchase through a card exchange method. We feel this change qualifies the language to avoid misunderstanding of the regulation by states utilizing this method."

40 *Fed.Reg.* 16320 (April 11, 1975).

■ The 1975 amendments to the exhibits in F.N.S. Instructions 734–6 IV merely illustrated the changes outlined in 7 C.F.R. § 271.6(d)(3) as amended, and were apparently promulgated in compliance with the Administrative Procedures Act. See 39 *Fed.Reg.* 35178; 40 *Fed.Reg.* 16320. This fact, however, would not cure the invalidity of the Instructions themselves. While the purpose of the relevant portions of the Administrative Procedures Act is to give interested parties an opportunity to submit data and to present their views on proposed rules, cf., *Flying Tiger Line, Inc. v. Boyd,* 244 F.Supp. 889 (D.D.C.1965), and subsequent partial compliance with the Act might cure an invalid rule, such is not the case here. From the discussion in 40 *Fed. Reg.* 16320 relating to the new ATP card design, the data and views presented went solely to the new signature feature and to the difficulty and expense of redesigning the cards and re-programming computers. Data and views on the mandatory requirement for the variable purchase option to be on the face of the ATP card were not submitted nor requested, thus the invalidity of F.N.S. Instruction 734–6 IV is not cured.

---

**5.** As to any argument that F.N.S. Instructions are rules of agency procedure and practice, see *Pickus* at 1114.

The defendants also contend that the immediate exchange program was properly approved by the Food and Nutrition Service. This approval would have been of little significance, however, if Instruction 734–6 IV were properly promulgated. The Food and Nutrition Service must follow its own valid instructions. Without a valid variable purchase instruction, the F.N.S. acts within its administrative authority and discretion to approve or disapprove Plans of Operation submitted to it by the State of New Jersey as they relate to the variable purchase option. See 7 C.F.R. § 270.3(a); 7 C.F.R. 271.8(a)–(e). The issue then becomes whether the Food and Nutrition Service approval of the "immediate exchange" program complies with the statutory requirement that the Secretary provide a "reasonable opportunity" for the exercise of the variable purchase option. 7 U.S.C. § 2016(b).

The purpose of the variable purchase option legislation was to allow food stamp recipients to purchase a portion of their monthly or semi-monthly stamp allotment at a proportionate reduction in cost. This would permit families who do not have the total amount of cash necessary to purchase a full supply of stamps, either because of a temporary financial crisis or because of the intervals within which their income is received, to avoid going without any stamps for extended periods. See generally 116 Cong.Rec. 41981, 42019 (1970). To this extent it is clear that the New Jersey "immediate exchange" variable purchase option is not the most convenient way of implementing the statute. The alternative heretofore examined is probably the most convenient method. Nevertheless, this Court cannot now say that the "immediate exchange" variable purchase option as implemented by the defendants does not offer a "reasonable opportunity" for the exercise of that option. Moreover the plaintiffs have made no factual showing that the defendants' "immediate exchange" program has been ineffective or unduly cumbersome in making the option available to New Jersey food stamp recipients.

This Court cannot predict what plaintiffs will show at a trial on the merits, but for the foregoing reasons their motion for summary judgment is denied.

As for plaintiffs' request for class action certification, plaintiffs shall submit a proposal defining the class or classes they wish certified.

Submit an Order.

## APPENDIX

Attachment to
Circular Letter No. 75–10–6

### SAMPLE LETTER EXPLAINING VARIABLE PURCHASE

### COUNTY FOOD STAMP OFFICE LETTERHEAD

Dear Sir or Madam:

Please be advised that you are not required to buy the full amount of the coupon allotment shown on your ATP (Authorization to Purchase) card(s). You may purchase a lesser amount of coupons in accordance with the following procedure:

If you receive one ATP card per month, you may send or bring it to the Food Stamp Office and exchange it for a card showing either 75%, 50%, or 25% of your monthly allotment, with the purchase requirement (price) reduced accordingly. For example, if your card shows that you are to pay $88. for $128. in coupons, you may exchange it for an ATP which requires payment of $66. for $96. in coupons, or an ATP which requires payment of $22. for $32. in coupons.

If you receive two ATP cards monthly, you may exchange either or both for another card(s) requiring purchase of only one half as many coupons for half the purchase requirement (price). For example, if your ATP cards each require payment of $18. in coupons, you may exchange either or both for another card(s) which requires payment of $9. for $12. in coupons.

You may exchange your ATP(s) every month if you wish. However, you are per-

mitted only one exchange in any one month. The exchange must, of course, be made before the ATP is taken to the bank; otherwise there will be no card to exchange.

To make this exchange, send or bring your ATP(s), before the 24th of the month, to the Food Stamp Office with your request for a reduced amount. If you mail your original ATP card(s), you will receive your replacement card(s) one week later. Once the reduction is made, it cannot be reinstated for that month.

If you have a question, please write or call the Food Stamp Office. However, actual requests for reduction cannot be accepted by telephone.

Very truly yours,

_____

(Name)
Food Stamp Office Supervisor