STATE OF SOUTH CAROLINA ex rel. G. Bryan PATRICK, Commissioner of Agriculture, Steven W. Hamm, as South Carolina Consumer Advocate, South Carolina Farm Bureau, Frank Flowers, W. Charles McGinnis, Lawrence Weathers, Plaintiffs,

Suncoast Milk Producers Cooperative, Independent Dairy Farmers Association, Inc., Tampa Independent Dairy Farmers' Association, Inc., Upper Florida Milk Producers Assn., Georgia Milk Producers, Inc., Coble Dairy Products Cooperative, Inc., Inter-State Milk Producers Cooperative, Inc., Dairymen, Inc., Plaintiffs-Intervenors,

v.

John R. BLOCK, Secretary of the United States Department of Agriculture, United States Department of Agriculture and Commodity Credit Corporations, Defendants.

Civ. A. No. 82–3172–0.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 10, 1983.

Clifford O. Koon, Jr., Asst. Atty. Gen., Columbia, S.C., for State of S.C. and G. Bryan Patrick, Com'r of Agriculture.

Russell H. Putnam, Jr., Natalie J. Moore, S.C. Consumer Advocate Staff Attys., Columbia, S.C., for Steven W. Hamm, S.C. Consumer Advocate.

Russell W. Templeton, Columbia, S.C., for S.C. Farm Bureau, Flowers, McGinnis and Weathers.

Venable Vermont, Spartanburg, S.C., D. Paul Alagia, Jr., Richard A. Gladstone, Sydney J. Butler, Washington, D.C., for plaintiffs-intervenors.

J. Paul McGrath, Asst. U.S. Atty. Gen., Arthur R. Goldberg, Stephen E. Hart, Dept. of Justice, Civ. Div., Washington, D.C., Henry Dargan McMaster, U.S. Atty., John B. Grimball, Asst. U.S. Atty., Columbia, S.C., for defendants.

Robert B. Broughton, Raleigh, N.C., for amicus curiae N.C. Farm Bureau Federation.

Sydney Berde, Berde & Hagstrom, P.A., St. Paul, Minn., for amicus curiae Associated Milk Producers, Inc.

Robert S. Bomar, Sr. Asst. Atty. Gen., Atlanta, Ga., for amicus curiae Tommy T. Irvin, Com'r of Agriculture of State of Ga.

## MEMORANDUM OPINION AND ORDER

MATTHEW J. PERRY, Jr., District Judge.

In this action the plaintiffs seek a declaratory judgment that a "determination" made by the Secretary of Agriculture of the United States on September 24, 1982 which requires a deduction of 50 cents per hundredweight from the proceeds of sales of all milk marketed commercially in the United States is in fact a regulation, promulgated without prior notice and without opportunity for public comment as required by the Administrative Procedure Act, 5 U.S.C. § 551 et seq. and is therefore violative of the Due Process Clause of the Fifth Amendment to the United States Constitution. Plaintiffs also seek preliminary and permanent injunctions against implementation of that determination. On December 21, 1982, this Court entered its Order temporarily restraining the defendants from collecting the 50 cents per hundredweight from milk producers and scheduled a hearing on the plaintiffs' motion for a preliminary injunction for January 3, 1983, the first business day following expiration of the temporary restraining order.[1] Prior to that hearing the Court granted a motion made on behalf of dairy farming organizations located in Kentucky, Pennsylvania, North Carolina, Georgia and Florida to intervene as plaintiffs. The intervenors

---

1. Subsequently, on December 23, 1982, the Order was amended to emphasize that the Court's restraint applied only to the fifty cent deduction authorized by the Secretary's determination of September 24, 1982.

joined in the contention that the Secretary's determination is unlawful for the reasons urged by the original plaintiffs and also contended that it violates the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* and Executive Order No. 12291 thus depriving them of their property without due process of law. The intervenors also contend that Title I of the Omnibus Budget Reconciliation Act of 1982, which provided *inter alia* that the Secretary of Agriculture may provide for the deduction of 50 cents per hundredweight of milk sales when he estimates that net price support purchases of milk products well exceed 5 billion pounds milk equivalent, is an unconstitutional delegation to the Secretary of the legislative power of Congress and thus violative of the separation of powers doctrine. The Court also has permitted the appearances as *amicus curiae* of the State of Georgia, the North Carolina Farm Bureau Federation and the Associated Milk Producers Incorporated. Collectively, the plaintiffs, the intervenors and the *amicus curiae* represent a substantial segment of the dairy farmers of America. At the hearing, witnesses for the plaintiffs, the intervenors and the Secretary testified concerning the price support program which has been in effect since 1949 and the impact which the Secretary's determination will have upon milk producers. Upon the completion of that hearing the Court extended the temporary restraining order through January 10, 1983 to permit further consideration of the issues and the preparation of this opinion. For the reasons that follow, the motion for a preliminary injunction is granted.

## I.

In this circuit, the leading case expounding the requirements for the issuance of a preliminary injunction is *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, Inc.,* 550 F.2d 189 (4th Cir.1977). Therein, the Court indicated that the proper test involves the flexible interplay of four factors: the possibility of irreparable harm to the plaintiffs if the relief is denied; the apparent strength of plaintiffs' case on the merits; the potential harm to the defendants if the preliminary injunction does issue; and the public interest. As the court emphasized, this Court is to weigh all four factors together to determine if an injunction should issue pending a full trial on the merits of the controversy.

I note that the courts of this circuit have stressed the need for flexible interplay among these four factors. In *Maryland Undercoating Company, Inc. v. Payne,* 603 F.2d 477 (4th Cir.1977), for example, the court indicated that a strong showing of a likelihood of irreparable injury would substantially lessen the plaintiff's need to show likelihood of success on the merits. Other cases from this and other circuits endorse this idea of flexible interplay of these factors, looking toward preserving the *status quo ante pendente litem.* See *e.g., Federal Leasing, Inc. v. Underwriters at Lloyd's,* 650 F.2d 495 (4th Cir.1981); *Telvest, Inc. v. Bradshaw,* 618 F.2d 1029, 1032 (4th Cir. 1980); *Jacksonville Port Authority v. Adams,* 556 F.2d 52 (D.C.Cir.1977); *Banks v. Trainor,* 525 F.2d 837, 841 (7th Cir.1975); *Virginia Petroleum Jobbers Assoc. v. Federal Power Commission,* 259 F.2d 921 (D.C. Cir.1985); O. Fiss, Injunctions 168 (1972).

In the instant case, the controlling factor is the strength of the plaintiffs' case on the merits. While the hearing of January 3 and 4 was not a full trial on the merits, there has been a full presentation of evidence, particularly the documents bearing on the Secretary's publication of his decision to impose the fifty cent per hundredweight deduction. This evidence clearly establishes the merits of the plaintiffs' case. No doubt, were this matter to proceed to a full trial, the defendants could augment the materials now in the record, but I have grave doubt that they could rebut the showing which the plaintiffs and intervenors have made that this deduction was imposed in violation of law and is therefore a nullity. Because of the importance which I give to the plaintiffs' showing on the merits, it is this factor to which I will turn first. As will hereafter appear, I believe that the other factors follow from this.

## II.

### A. THE MILK SURPLUS PROBLEM.

All parties agree that this nation suffers a problem of chronic over-production of dairy products. Milk production for 1982 is estimated to have been some 133 billion pounds milk equivalent. This supply far exceeds demand, so that in recent years to maintain milk prices at or near their current, legislatively mandated levels, the Secretary of Agriculture, acting through the Commodity Credit Corporation, has had to buy huge quantities of milk products. Department of Agriculture officials, testifying before this Court, indicate that the Commodity Credit Corporation currently purchases some 30% of the butter produced in this country, some 22% of the cheese, and some 68% of the non-fat dry milk. The storage costs alone for these purchases is some fifty million dollars per year. The total cost of the milk price support program has now reached some $2.2 billion per year, and estimates are that under the current system of price supports, the surplus will continue to grow.

Faced with this increasingly costly program, the federal government has come under growing pressure to control these costs. The deduction which the plaintiffs challenge by this action stems from a congressional response to the problem.

### B. THE 1982 LEGISLATION.

The basic issue in this matter is the validity of the fifty cent per hundredweight deduction requirement imposed by the Secretary. This deduction was authorized by Congress as part of Public Law 97–253, enacted September 8, 1982, commonly re-

ferred to as the Omnibus Budget Reconciliation Act. Section 101 of the Omnibus Act amended the Agriculture and Food Act of 1981 (7 U.S.C. § 1446), enacting three provisions which are relevant to this matter. First, the Congress altered the mandate for price support levels for milk and milk products by prescribing a minimum dollar level of 13.10.[2]

The second substantive change, the provision which is at the center of this controversy, is the language, to be codified as 7 U.S.C. § 1446(d)(2):

Effective for the period beginning October 1, 1982, and ending September 30, 1985, the Secretary may provide for a deduction of 50 cents per hundred weight from the proceeds of sale of all milk marketed commercially by producers to be remitted to the Commodity Credit Corporation to offset a portion of the cost of the milk price support program. Authority for requiring such deductions shall not apply for any fiscal year for which the Secretary estimates that net price support purchases of milk or the products of milk would be less than 5 billion pounds milk equivalent.

The third substantive provision granted the Secretary discretionary authority to impose an additional fifty cent per hundredweight deduction after April 1, 1983, this authority not applying for any fiscal year for which the Secretary estimates that the net price support purchases would be less than 7.5 billion pounds milk equivalent.[3]

### C. THE SECRETARY'S ACTIONS.

The first official, public action which the Secretary took concerning either the basic price support program or the fifty cent

---

**2.** Heretofore, the Congress had merely directed that the price level be set between certain percentages of parity, leaving the actual computation of a dollar price figure to the Secretary. In § 101 of the Omnibus Act, the Congress provided "the price of milk shall be supported at not less than $13.10 per hundredweight of milk containing 3.67 per centum milkfat." Pub.L. No. 97–253, § 101(2), 96 Stat. 763 (to be codified as 7 U.S.C. § 1446(d)(1)(A).

Apparently, Department of Agriculture officials believed Congress mandated a specific

price level of $13.10. Dr. Charles Shaw testified that this was what the Omnibus Act provided. I believe he is misinformed. As I read the Act, it set a specific minimum, but leaves the Secretary free to authorize a higher price support level within the prescribed parity limits.

**3.** The second fifty cent deduction is also subject to certain other conditions of administration which are not pertinent to this discussion.

deduction was the publication of two entries in the Federal Register on September 24, 1982. In terms of its significance in the course of events, the first of these was a "Notice of Determination." (47 Fed.Reg. 42,128–29 (Sept. 24, 1982)). This Notice, which appeared over the signature of the Secretary of Agriculture, made two significant announcements: first, that the basic support price for milk would be $13.10 per hundredweight, the minimum allowable under the Omnibus Budget Reconciliation Act; and second:

> A deduction of 50 cents per hundredweight from the proceeds of the sale of all milk marketed commercially by producers which shall be remitted to the Commodity Credit Corporation to offset a portion of the cost of the milk support program beginning December 1, 1982. 47 Fed.Reg. at 42,129.

The announcement also stated what the defendants have subsequently cited as the legal justification for the fact that the Secretary made no attempt to comply with the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 551 et seq.:

> It has been determined that the Regulatory Flexibility Act is not applicable to this Notice of Determination since the CCC is not required by 5 U.S.C. 553 or any other provision of law to publish a notice of proposed rulemaking with respect to the subject matter of this notice.
>
> The Omnibus Budget Reconciliation Act of 1982, approved September 8, 1982, amends the dairy price support provisions contained in Section 201 of the Agricultural Act of 1949. Since the level of support becomes effective October 1, 1982, it has been determined that this notice should be issued without prior opportunity for public comment in order

that producers, handlers, and others might be informed of these determinations as soon as possible. 47 Fed.Reg. at 42,128.

That same day, September 24, 1982, there also appeared a notice of a Proposed Rule, 47 Fed.Reg. 42,112 (Sept. 24, 1982). This notice summarized the proposed rule, stating:

> The proposed rule sets forth the administrative procedures that would be used to implement the deduction of 50 cents per hundredweight from the proceeds of the sale of all milk marketed commercially by producers. The provisions of the proposed rule would apply only to the milk that is marketed commercially by producers during those months for which the Secretary has announced that the deductions are required. 47 Fed.Reg. at 42,112.

A reading of this notice makes clear that the rule which it proposed was an implementing rule only. It presupposed that the deduction would be required. Throughout, the Notice makes clear that the Secretary had already decided that a deduction would be levied. The Notice solicited comments, but these went solely to the question of how the deduction would be collected, and not to the question *whether* it would be collected.[4]

Although the Notice did solicit comments, it also stated, as had the Notice of Determinations published the same day, that the Commodity Credit Corporation was not required by 5 U.S.C. § 553 to publish the notice of proposed rule-making.

Finally, on November 30, 1982, the Commodity Credit Corporation published the final rule concerning the procedures for the collection of the fifty cents per hundredweight deduction. 47 Fed.Reg. 53,831 (Nov. 30, 1982).[5]

---

4. "[T]he Secretary has determined that the deductions should become effective on December 1, 1982. Comments on whether the dairy collection plan should be implemented in the manner set forth in this proposed rule are invited." 47 Fed.Reg. at 42,112.

5. As did both of the earlier Federal Register publications, the notice of Final Rule contained

a statement that "It has been determined that the Regulatory Flexibility Act is not applicable to this final rule since the Commodity Credit Corporation [CCC] is not required by 5 U.S.C. § 553 or any other provision of law to publish a notice or proposed rule-making with respect to the subject matter of this final rule."

As with the notice of the proposed rule of September 24, 1982, the Notice of the Final Rule concerned exclusively the question of how the Secretary's fifty cents per hundredweight deduction would be collected. That the Secretary was going to implement this program was regarded as an accomplished fact. This is made clear by discussion of the comments received, which noted that comments on the decision to impose the deduction did not relate to the specific subject of the final rule. This final rule became effective the following day, December 1, 1982.

On December 17, 1982, the plaintiffs filed this action, challenging the fifty cents per hundredweight deduction which the Secretary had ordered imposed by the September 24, Notice of Determination.

### III.

The plaintiffs and the plaintiffs-intervenors have raised a variety of challenges to the Secretary's imposition of the deduction. The argument which this Court finds most persuasive is the contention that the Secretary's imposition of the deduction violates the Administrative Procedure Act.[6] The gist of this contention, to make clear, is that for administrative action of this significance, the Secretary was required to observe procedures which he refused to observe in imposing this deduction. Particularly, the plaintiffs and the intervenors contend that the Secretary was required to give notice that he proposed to levy this deduction and allow a reasonable opportunity for public comment on his proposed action before he proceeded. They contend that this is required by 5 U.S.C. § 553.

As with earlier Notice of Determinations and of Proposed Rule, this statement gives no indication as to who made the determination or the basis on which it was reached.

**6.** Because of this resolution of the matter, I do not reach the other contentions raised by the intervenors. These can be considered when the matter proceeds to a trial on the merits.

**7.** § 553. Rule-Making
 (a) This section applies, according to the provisions thereof, except to the extent that there is involved—

Because I find that it is necessary to consider at least portions of two of the five subsections of section 553, I have set forth the relevant portions of the statute in the margin.[7]

In defense of the deduction requirement, the Secretary contends that its imposition by the September 24 Notice of Determination is valid, the requirements of 5 U.S.C. § 553 notwithstanding, because either 1) this is "a matter relating to . . . benefits," and therefore exempt from the notice and public comment requirements under 5 U.S.C. § 553(a)(2); 2) there was good cause sufficient to excuse the Secretary from these requirements under 5 U.S.C. § 553(b)(B); or 3) the Secretary's course of action with regard to this deduction allowed for sufficient comment by interested parties to amount to substantial compliance such that to void his action for want of literal compliance with the Administrative Procedure Act would pointlessly elevate form over substance.

Preliminary to these considerations, however, there is a question whether the Secretary's decision to implement the deduction was "rule making" bringing it within the requirements of § 553.

### A. THE SECRETARY'S DETERMINATION AS RULE MAKING.

■ The argument has been made that the Secretary's determination to impose the fifty cent per hundredweight deduction on September 24 is not an exercise in rule making, so that the requirements of 5

(2) A matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.
 (b) General notice of proposed rule making shall be published in the Federal Register, . . . Except when notice or hearing is required by statute, this subsection does not apply—
 (B) When the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

U.S.C. § 553(b) are inapplicable to his action.[8] I find this argument untenable.

The Administrative Procedure Act, at 5 U.S.C. § 551, sets forth the various definitions used in the Act. "Determination" is not one of the fourteen terms which the section defines. This section does define "rule" at subsection (4), using expansive language.[9] The notion that the Secretary's "determination" is an action having significance only within the agency, and therefore unreviewable by this Court must fail. The Secretary did not merely announce the existence of a fact, comparable to a court taking judicial notice. The Omnibus Budget Reconciliation Act vested in the defendant Secretary the discretion to impose a deduction, given the existence of his estimate that the surplus in the fiscal year would require the purchase of five million pounds milk equivalent. He found that fact, and then exercised his discretion, vested in him by the Congress, to impose the deduction. The resulting action was "within the granted and delegated powers of the Department ..., reasonable ..., unequivocal, and ... emanated from executives of the Department within their areas of responsibility." *Oil Shale Corporation v. Morton,* 370 F.Supp. 108, 122 (D.Colo.1973). This action fell within the clear terms of 5 U.S.C. § 551(4), being "a part of an agency statement of general ... applicability and future effect designed to implement, interpret, or prescribe law ... and [including] prescriptions for future of rates...." As such, this action by the Secretary, regardless of the label under which he chose to announce it, was rule making, and the Secretary's choice of heading under which to publish his decision to implement this action does not alter this fact. *National Labor Relations Board v. Wyman-Gordon Company,* 394 U.S. 759, 764–65, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969) (plurality opinion); *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 1199, 86 L.Ed. 1563 (1942); *United States Steel v. Environmental Protection Agency,* 595 F.2d 207, 213 (5th Cir.1979); *Guardian Federal Savings & Loan v. Federal Savings & Loan Insurance Corporation,* 589 F.2d 658, 666 (D.C.Cir.1978); *Joseph v. United States Civil Service Commission,* 554 F.2d 1140, 1153 (D.C.Cir.1977); *Arlington Oil Mills v. Knebel,* 543 F.2d 1092, 1098 (5th Cir.1976); *Detroit Edison Company v. United States Environmental Protection Agency,* 496 F.2d 244, 249 (6th Cir.1974); *P.B.W. Stock Exchange, Inc. v. Securities and Exchange Commission,* 485 F.2d 718, 732 (3d Cir.1973); *American Express Company v. United States,* 472 F.2d 1050, 1055 (C.C.P.A. 1973).

Accordingly this Court, pursuant to the directives of Rule 52, finds as a fact that the Secretary of Agriculture, by imposing the fifty cent per hundredweight deduction by the Notice of Determination published at 47 Fed.Reg. 42,128, made a rule within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551(4). Fed.R.Civ.P. 52.

## B. THE "BENEFITS" EXCEPTIONS, 5 U.S.C. § 553(a)(2).

■ The Administrative Procedure Act exempts from the normal requirements of rule-making matters relating to "public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a)(2). The defendants contend that this exemption is applicable because the deduction relates to the

---

8. The contention that the Notice of Determination did not set forth a rule, and thus was not subject to any of the requirements of 5 U.S.C. § 553 (concerning rule making), was pressed before this Court not so much by the defendants as by counsel for the Associated Milk Producers Incorporated, appearing *amicus curiae.* The question which the *amicus curiae* raises is a legitimate one, which the Court feels warrants response.

9. Title 5 U.S.C. § 551(4) provides:

"rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances thereof or of valuations, costs, or accounting, or practices bearing on the foregoing.

milk price support program, which is a grant or benefit.

That the milk price support program is a benefit cannot be doubted. Dairy farmers of the nation have no true "right" to have the price of milk supported by the government. It has long been recognized, however, that governmental benefits and grants have become so critical to the working of our society that it is unrealistic to regard them as a "charity" or a "gratuity" to be withdrawn in a capricious manner. The term which more realistically describes the milk price support system and many other programs is "entitlements." *Cf. Goldberg v. Kelly,* 397 U.S. 254, 262 & n. 8, 90 S.Ct. 1011, 1017 & n. 8, 25 L.Ed.2d 287 (1970); *see also* Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues,* 73 Yale L.J. 1245 (1965); Reich, *The New Property,* 73 Yale L.J. 733 (1964).

It was apparently in response to concerns of this nature that the Administrative Conference of the United States recommended that agencies afford the public the opportunity to participate in rule-making bearing on matters mentioned in 5 U.S.C. § 553(a)(2), the exemptions of that provision notwithstanding. On July 24, 1971, the Secretary of Agriculture published an announcement that, effective that date, the Department of Agriculture would follow the requirements of 5 U.S.C. § 553(b) and (c). 36 Fed.Reg. 13,804 (July 24, 1971).[10]

In their brief, the defendants contend that this was merely a voluntary undertaking, a general statement of policy, which "does not impose any rights and obligations...." Defendants' Memorandum of Law at 33, quoting *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d Cir.1969).

While a general statement of policy does not impose rights or obligations, I find that the waiver made by the Secretary of Agri-

culture in 1971 does create rights and obligations. Thus, as with the Notice of Determination in the instant case, it is the substance of the Secretary's action rather than the label given his action which controls. *Columbia Broadcasting System, Inc. v. United States, supra; Cerro Metal Products v. Marshall,* 620 F.2d 964, 981 (3d Cir.1980); *Brown Express, Inc. v. United States,* 607 F.2d 695, 700 (5th Cir.1979); *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478, 481 (2d Cir.1972); *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d Cir.1969); *City of New York v. Diamond,* 379 F.Supp. 503, 518 (S.D.N.Y.1974); *Nader v. Butterfield,* 373 F.Supp. 1175 (D.D.C.1974); *Pharmaceutical Manufacturers Association v. Finch,* 307 F.Supp. 858, 863 (D.Del.1970).

The substantive impact of 36 Fed.Reg. 13,804 (1971), was decided by the District of Columbia Court of Appeals in the case of *Rodway v. United States Department of Agriculture,* 514 F.2d 809 (D.C.Cir.1975). Therein, Judge J. Skelly Wright stated:

On July 24, 1971, however, as a result of a recommendation of the Administrative Conference of the United States, USDA promulgated a regulation making the procedural requirements of Section 4 of the APA [5 U.S.C. § 533] applicable to all of its rule-making relating to "public property, loans, benefits, or contracts." The regulation was effective immediately. 36 Fed.Reg. 13,804. It is of course, well settled that validly issued administrative regulations have the force and effect of law. [Citations omitted.] Thus, the regulation fully bound the Secretary to comply thereafter with the procedural demands of the APA.

514 F.2d at 814.

While the defendants contend that the holding and the reasoning of *Rodway* is in error, it is endorsed by courts in the Second,[11] the

---

**10.** The Secretary did state that the Department would continue to use the "good cause" exceptions provided by 5 U.S.C. § 553(b)(B), but pledged that the Department would use these sparingly, only when there was substantial basis for their use, and observing full procedural

formalities involved in their use. 36 Fed.Reg. 13,804 (July 24, 1971).

**11.** *Tyson v. Maher,* 523 F.2d 972, 975–76 (2d Cir.1975).

Third,[12] the Fifth,[13] and the Ninth Circuits,[14] and the defendants have cited no case in which a court has rejected *Rodway*.

The defendants concede that the 1971 announcement must be regarded as "an announcement of how an agency may be expected to exercise discretion which it possesses" (Defendants' Memorandum of Law at 33). Counsel for the defendants acknowledged that the proper course for the Secretary to withdraw from the 1971 position, should the Secretary be determined to do so, is to announce a new position with respect to the Administrative Procedure Act requirements, and thereby warn those affected of the new policy. Such a new policy will have sweeping ramifications and impact on the lives of many people. It is manifestly unfair for the defendants to announce it in a way that does not give notice to those who are affected, such as in briefs in litigation.

The Secretary of Agriculture has bound himself by his regulation promulgated in 36 Fed.Reg. 13,804 (1971), to observe the requirements of 5 U.S.C. § 553(b) and (c). He has never withdrawn from that position. Accordingly, this Court finds that the defendant Secretary has waived the exemptions of 5 U.S.C. § 553(a)(2). Fed.R.Civ.P. 52.

## C. THE "GOOD CAUSE" EXCEPTIONS, 5 U.S.C. § 553(b)(B).

The defendants assert that the circumstances under which Congress enacted the provisions which provided for this deduction created a situation in which immediate action was required. Noting that the "marketing year" for milk producers begins on October 1, and that dairy production decisions are heavily affected by the level of milk price supports, the Secretary felt it was essential to announce the price support level for the forthcoming year promptly. The Secretary elected to announce his decision to implement the fifty cent per hundredweight deduction as part of the same notice of September 24, because he concluded that it was essential to make this same information available to those who would be affected by his decision. His goal was to give them as much warning as possible before the program went into effect.

Though the defendants have not expressed themselves in precisely these words, it appears that their position can be summarized as follows: there simply was not adequate time to call for public comment before the program had to be in full operation. That this is the gist of the defendants' contention is made clear by their reliance on the statement in the September 24 Notice of Determinations:

> The Omnibus Budget Reconciliation Act of 1982, approved September 18, 1982, amends the dairy price support provisions contained in Section 201 of the Agricultural Act of 1949. Since the level of support becomes effective October 1, 1982, *it has been determined that this notice should be issued without prior opportunity for public comment in order that producers, handlers, and others*

12. *Reyes v. Klein,* 411 F.Supp. 1241 (D.N.J. 1976).

13. *Arlington Oil Mills, Inc. v. Knebel,* 543 F.2d 1092 (5th Cir.1976); *see also Crown Zellerbach Corporation v. Marshall,* 441 F.Supp. 1110, 1119 (E.D.La.1977) (similar waiver of § 553(a)(2) exemptions is legally binding on the Department of Labor).

14. *Anderson v. Butz,* 428 F.Supp. 245, 249 (E.D.Cal.1975), *aff'd.* 550 F.2d 459 (9th Cir. 1977).

I also draw the parties' attention to the recent case of *Buschmann v. Schweiker,* 676 F.2d 352 (9th Cir.1982). Therein at page 356, footnote 4, the court said:

The Administrative Procedures (sic) Act is applicable to rulemaking by the Secretary of Health and Human Services. Although 5 U.S.C. § 553(a)(2) would have exempted the rulemaking procedure now in dispute, the then Secretary of Health, Education and Welfare, in a policy statement dated January 28, 1971, (36 Fed.Reg. 2532), required all agencies utilize the public participation and officers in his department to procedures of § 553. *The Secretary does not contest his legal obligation to comply with § 553 procedures.* [emphasis added]

*Accord Lewis v. Weinberger,* 415 F.Supp. 652 (D.N.M.1976).

*might be informed of these determinations as soon as possible.*

47 Fed.Reg. at 42,128 [emphasis added].

The defendants contend that the circumstances which the Secretary faced made public notice and the opportunity to comment on the Secretary's decision to impose the deduction "impracticable, unnecessary, or contrary to the public interest," exempting him from the publication requirements of the Administrative Procedure Act, and that the above quoted portion of the Notice of Determinations was a sufficient finding and brief statement of reasons for the Secretary's action in making his determination without asking for prior public comment.

The defendants' argument is flawed in several respects. First, it assumes that the Secretary was required to implement the deduction. A review of the statute shows that this is not so. The relevant language in the Omnibus Act is "the Secretary *may* provide for a deduction of 50 cents per hundredweight." (emphasis added) The use of the verb "may" is critical. The verb "may" in legislation is well understood to indicate that the authorized action is permissive, not mandatory. It grants discretion to act; it does not impose an obligation to act. That the Secretary's authority to impose the deduction requirement was permissive and discretionary is made all the more clear by the use of the verb "shall" in the very next sentence of the Act: "Authority for requiring such deductions *shall* not apply...." [emphasis added] *Hecht Company v. Bowles,* 321 U.S. 321, 326–27, 64 S.Ct. 587, 590, 88 L.Ed. 754 (1944); *Farmers and Merchants Bank v. Federal Reserve Bank,* 262 U.S. 649, 662–63, 43 S.Ct. 651, 656, 67 L.Ed. 1157 (1923); *United States v. Cook,* 432 F.2d 1093, 1098–99 (7th Cir.1970); *United States v. Hughes,* 414 F.2d 1330, 1334 (9th Cir.1969); *Brown v. Hecht Company,* 137 F.2d 689, 692–94 (D.C. Cir.1943); *United States ex rel. Pappis v. Tomlinson,* 45 F.Supp. 447, 448 (N.D.Ohio 1942); *Drafting Rules for Writing Uniform or Model Acts,* Handbook of the National Conference of Commissioners of Uniform States Law 318 (1968).

Witnesses for the defense testified that Congress fully expected the Secretary to impose this deduction. However that may be, the Congress did not make the imposition of the program mandatory, and the defense witnesses' understanding of Congressional expectations cannot alter the clear and unequivocally permissive language of the statute.

A second aspect of the defendants' argument is the notion that the Secretary was required to implement the deduction by a specific date. The Omnibus Act, however, gives no indication beyond the dates of the Secretary's general authority as to when Congress expected this program to be implemented, and, as observed above, the very implementation of the deduction was permissive. The defendants have not presented to the Court any materials from the legislative history of the Omnibus Act or any other materials which suggest that Congress mandated the imposition of this program by any set date. The defense witnesses have indicated that it has long been the practice of the Department of Agriculture to announce price support levels as soon as possible, in order to allow the dairy industry to make necessary adjustments before these support levels go into effect. This past practice, however, does not have the force of law sufficient to override the unequivocal mandates of the Administrative Procedure Act. Further, these same witnesses have testified that the fifty cent per hundredweight deduction is a totally new program, without precedent. It is hard to see how past practice with respect to a well-established program bears on the practice in a totally new program.

The Congress could have indicated that the Secretary was to institute this program by a specific date, and could have stated that the program was to go into effect by a specific date the time constraints imposed by the Administrative Procedure Act notwithstanding. The Congress gave no such indication, nor even any such suggestion. Instead, there is every indication that the Congress expected that the Secretary's administrative actions would comply fully

with the Administrative Procedure Act. *Sharon Steel Corporation v. United States Environmental Protection Agency,* 597 F.2d 377, 380 (3d Cir.1979) (absent explicit indication that the Administrative Procedure Act does not apply, it is to be followed).

The gist of the Secretary's argument is that considerations of the practical administrative efficiency of the Department required immediate action. The Secretary apparently believes that these considerations of administrative efficiency can and should override the provisions of the Administrative Procedure Act, that these considerations constitute "good cause" within the meaning of 5 U.S.C. § 553(b)(B). The defendants' attitude with respect to the requirement of public participation in the substantive rule-making process in which the Secretary engaged in this instance is perhaps most cogently, and most unfortunately, summed up by the testimony of Dr. Charles Shaw, Leader, Dairy/Sweeteners Group of the Analysis Division, Agricultural Stabilization and Conservation Service. Dr. Shaw testified that public participation in the Secretary's decision was not allowed because there was really nothing that the public could contribute. The Secretary had decided to impose the deduction, and that was the end of the matter.

 This Court does not agree. The modern government which affects the average citizen generally is administrative government. The fundamental legislation by which Congress has set controls on administrative agencies action is the Administrative Procedure Act. And perhaps the most significant provision of that Act is section 553, with its requirement that administrative agencies conduct themselves through rule-making in which the public is allowed and indeed invited to participate.

Section 553 was one of Congress's most effective and enduring solutions to the central dilemma it encountered in writing the APA—reconciling the agencies' need to perform effectively with the necessity that "the law must provide that the governors shall be governed and the regulators shall be regulated, if our present form of government is to endure." S.Doc. No. 248, 79th Cong., 2d Sess. 244 (1946), *quoting* H.R.Rep. No. 1146, 76th Cong., 1st Sess. 2 (1939). The "principal purpose" of section 553 was "to provide that the legislative functions of administrative agencies shall so far as possible be exercised only upon public participation on notice...." *Id.* at 257. Congress thus selected public participation in rule-making as its means of assuring that an agency's decisions are both informed and responsive.

*American Bus Association v. United States,* 627 F.2d 525, 528 (D.C.Cir.1980); *accord, State of New Jersey v. United States Environmental Protection Agency,* 626 F.2d 1038, 1045 (D.C.Cir.1980). Section 553 is intended to insure that the process of legislative rule-making in administrative agencies is infused with openness, explanation, and participatory democracy which is essential to minimize the dangers of arbitrary and irrational decision-making. While the final choice among technically available alternatives is vested with the administrative agency, it is only when decisions are made in an atmosphere of public understanding, awareness, and participation that resulting rules and regulations reflect a spirit which is consistent with our form of government and thus entitled to the respect of the courts. *Weyerhauser Company v. Costle,* 590 F.2d 1011, 1028–29 (D.C.Cir.1978); *State of New Jersey, supra.*

One court explained the requirements of section 553 saying:

Section 553 was enacted to give the public an opportunity to participate in the rule-making process. It also enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated.... These procedures must be followed when an agency is exercising its legislative function in order that its rules have the force of law.

*Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d Cir.1969); *accord, Mobil Oil Corporation v. Department of Energy,* 610 F.2d 796, 802 (Em.App.1979).

Consistent with this purpose, it has been held that the mere invocation of the "good cause" exceptions provided in § 553(b)(B) cannot automatically excuse administrative agencies from the notice and comment requirements of this section:

> It will thus be the duty of reviewing courts to prevent avoidance of the requirements of the bill by any manner or form of indirection, and to determine the meaning of the words and phrases used. For example, in several provisions the expression "good cause" is used. The cause so specified must be interpreted by the context of the provision in which it is found and the purpose of the entire section and bill. *Cause found must be demonstrable and real.*

S.Doc. No. 248, 79th Cong., 2d Sess. 217 (1946); quoted in *State of New Jersey, supra,* at 1046 [emphasis added]; *Detroit Edison Company v. United States Environmental Protection Agency,* 496 F.2d 244 (6th Cir.1974); *Consumers Union of the United States, Inc. v. Sawhill,* 393 F.Supp. 639 (D.D.C.1975).

■ All claims of exemptions from the notice and comment requirements of 5 U.S.C. § 553 must be examined, and the exceptions provided by the Act are to be narrowly construed. As the legislative history clearly indicates, Congress was emphatic in its view that the exception for "good cause" provided by § 553 is to be read stringently.

> The exemption of situations of emergency or necessity is not an "escape clause" in the sense that any agency has discretion to disregard its terms or the facts. *A true and supported or supportable finding of necessity or emergency must be made and published.*

S.Doc. No. 248, 79th Cong., 2d Sess. 200 (1946), quoted in *State of New Jersey, supra,* at 1046 [emphasis added]. As the Court of Appeals for the District of Columbia concluded in *State of New Jersey v. United States Environmental Protection Agency, supra,* at 1045:

> [I]t should be clear beyond contradiction or cavil that Congress expected, and

the courts have held, that the various exceptions to the notice-and-comment provisions of section 553 will be narrowly construed and only reluctantly countenanced.

Another court explained the "good cause" exception saying:

> This exception should be read narrowly. . . . It is an important safety valve to be used where delay would do real harm. It should not be used, however, to circumvent the notice and comment requirements whenever an agency finds it inconvenient to follow them.

*United States Steel v. United States Environmental Protection Agency,* 595 F.2d 207, 214 (5th Cir.1979) (footnote omitted); *accord, Sharon Steel Corporation v. Environmental Protection Agency,* 597 F.2d 377, 379–80 (3d Cir.1977); *Detroit Edison, supra.*

■ Courts construing each of the stated rationales for the "good cause" exception indicate that their invocation can be justified only under circumstances far more compelling than those which the Secretary faced in deciding to impose the fifty cents per hundredweight deduction without allowing public comment. "Unnecessary" as used in § 553 is confined to those situations in which the administrative rule is "a routine determination," "insignificant in nature and impact," and inconsequential "to the industry and to the public." *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 743 (3d Cir.1969); *National Motor Freight Traffic Association v. United States,* 268 F.Supp. 90, 95–96 (D.D.C.1967).

It cannot be suggested that the Secretary's determination is an inconsequential matter unimportant to the dairy industry. The defendants' witnesses testified that the deduction would require dairymen to pay \$55–60 million per month. The Notice of Determination itself stated:

> This Notice of Determination . . . has been classified as "major" since the determinations with respect to the level of support for milk and deductions from proceeds of milk sold by producers during the 1983 fiscal year will have an effect on the economy exceeding \$100 million.

47 Fed.Reg. at 42,128.

This Court finds as a fact that the decision to impose the fifty cents per hundredweight deduction was not an inconsequential or unimportant matter, the publication of which was unnecessary under 5 U.S.C. § 553(b)(B). Fed.R.Civ.P. 52.

█ In like manner, those cases which have considered administrative claims of impracticability have construed that exception narrowly. Particularly, courts have generally rejected claims that notice and public comment procedures were impracticable because of time constraints imposed by legislative or judicial mandates. In this instance, of course, Congress did not mandate immediate action.

That this exception was to be given a narrow construction is made clear by the legislative history of the Administrative Procedure Act:

> "Impracticable" means a situation in which the due and required execution of the agency functions would be unavoidably prevented by its undertaking public rule-making procedures.

S.Rep. No. 752, 79th Cong., 1st Sess. 16 (1945). It can hardly be contended that the Secretary's imposition of this deduction requirement was part of the "due and required execution of the agency functions." The imposition of this requirement was at the complete discretion of the Secretary. Any requirement that it be imposed was of his own creation.

Further, the courts have made clear that a statement such as the Secretary made, announcing the need to notify the affected parties, does not establish impracticability. In *Mobil Oil Corporation v. Department of Energy,* 610 F.2d 796 (Em.App.1979), the announcement by which the agency sought to justify dispensing with notice and com-

ment was fundamentally identical with the announcement which the Secretary included in his September 24 Notice of Determination.[15] The Court rejected this justification. The Court specifically rejected the rationale that the supposed need to inform affected persons of agency decisions allowed the agency to dispense with the affected persons' right to participate in the making of those decisions. To allow such an exemption, the Court concluded, would effectively void the notice and comment requirement. 610 F.2d at 803, citing *Nader v. Sawhill,* 514 F.2d 1064, 1068 (Em.App.1975). The court ruled that in order to come within the narrow exception allowed for impracticability, an agency would have to show that it faced exigent circumstances so compelling that notice and comment procedures were not merely inconvenient but were effectively impossible. 610 F.2d at 802–03.

Along similar lines, the Court of Appeals for the Fifth Circuit stated in *United States Steel v. United States Environmental Protection Agency,* 595 F.2d 207, 213 (5th Cir. 1979):

> The mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause for a § 553(b)(B) exception.

The vast majority of the courts which have examined agency claims of impracticability hold that the mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause for dispensing with notice and comment. *State of New Jersey, supra; Sharon Steel Corp. v. Environmental Protection Agency, supra; American Iron & Steel Institute v. Environmental Protection Agency,* 568 F.2d 284 (3d Cir.1977); *Shell Oil Co. v. Federal Energy Administration,* 527 F.2d 1243 (Em.App.1975).[16]

---

**15.** The announcement stated:

Because the purpose of these amendments is to provide immediate guidance and information with respect to the mandatory petroleum price rules and regulations which apply to refiners' permissible prices in the month of May, the Federal Energy Office finds that normal rule-making procedure is impracticable and that good cause exists for making

these amendments effective in less than 30 days.

(Published at 39 Fed.Reg. 15,139 (1974), quoted, at 610 F.2d at 802–03).

**16.** The leading case to the contrary is *United States Steel v. United States Environmental Protection Agency,* 605 F.2d 283 (7th Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62

Further, any contention that the Secretary was compelled to act under a time schedule which precluded notice and comment must fail because whatever deadlines the Secretary faced were of his own creation. The defendants have shown no reason why the Secretary was required to announce the fifty cents per hundredweight deduction simultaneously with the announcement of the price supports for the coming marketing year. It appears from the record that there was a need to impose the deduction effective December 1 only because the Secretary felt that there was a need to impose it as of that time.[17]

This Court finds as a fact that there were no legislative, judicial, or other mandate which compelled the Secretary to implement the fifty cents per hundredweight deduction without allowing for notice and comment. Fed.R.Civ.P. 52.

The final exception allowed under 5 U.S.C. § 553(b)(B) is where notice and comment would be contrary to the public interest. This exception requires little discussion. Any notion that it is contrary to the public interest to allow notice and comment for those who will be affected, perhaps very seriously affected, by a program which the Secretary himself conceded to be a major program is unsound. This argument ignores the importance of public participation in administrative procedures and the clear mandate of the Administrative Procedure Act. *American Bus Association v. United States,* 627 F.2d 525 (D.C.Cir.1980); *State of New Jersey v. United States Environmental Protection Agency,* 626 F.2d 1038 (D.C.Cir.1980); *Weyerhauser Company v. Costle,* 590 F.2d 1011, 1027–28 (D.C.Cir. 1978). To allow such a rule would make administrative inconvenience an escape valve for thwarting the Administrative Procedure Act, a suggestion consistently rejected. *See, e.g., United States Steel v. United States Environmental Protection Agency,* 595 F.2d 207, 214 (5th Cir.1979); *State of New Jersey, supra.*[18]

L.Ed.2d 672 (1980), followed in *Republic Steel Corp. v. Costle,* 621 F.2d 797 (6th Cir.1980). The analysis presented in these cases was subsequently rejected by the District of Columbia Court of Appeals in *State of New Jersey v. United States Environmental Protection Agency,* 626 F.2d 1038 (D.C.Cir.1980). There is also an excellent analysis of the Seventh Circuit's ruling, describing it as "unfortunate," in Note, *The "Good Cause" Exception: Danger to Notice and Comment Requirements Under the Administrative Procedure Act,* 68 Geo.L.J. 765 (1980).

Even assuming the validity of the view taken by the Seventh Circuit, the Secretary's action would still not come within the "good cause" exception as impracticable. The compulsion under which the Environmental Protection Agency acted was far greater than that which induced the Secretary to impose the deduction herein.

17. Indeed, the record indicates that even the Secretary did not regard December 1 as sacrosanct. On September 3, 1982, Mr. Edward Coughlin, the Director of the Dairy Division of the USDA Agricultural Marketing Service addressed letters to state dairy officials throughout the nation. In the letters, Mr. Coughlin stated preparations were already being made to implement the assessment plan on October 1. *See* Plaintiffs' Exhibit 2. Further, an Interim Rule was drafted, though never signed or published, in which the Commodity Credit Corporation announced that the plan would be effective October 1. *See* Plaintiffs-Intervenors' Exhibit 2.

There is no explanation why the Secretary found it necessary to delay implementation of the deduction from October 1 to December 1. Nor is there any explanation why the Secretary could not further delay the program to allow for public comment.

18. I note that in some cases, courts have found that special circumstances, none of which are found in this case, made it in the public interest to forego notice and comment procedures. Courts have found good cause several times in cases involving government price controls, because the announcement of future controls could cause severe undesirable market distortions. *See De Rieux v. Five Smiths, Inc.,* 499 F.2d 1321 (Em.App.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *Nader v. Sawhill,* 514 F.2d 1064 (Em.App.1975). The exception has been approved concerning regulations on gas stations where shortages and discriminatory prices had led to deprivations of supply and violence. *Reeves v. Simon,* 507 F.2d 455 (Em.App.1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1426, 43 L.Ed.2d 672 (1975). It has also been permitted when the exigencies of a foreign relations crisis made an imperative response essential. *Narenji v. Civiletti,* 481 F.Supp. 1132 (D.D.C.1979); *cf. Yassini v. Crosland,* 618 F.2d 1356 (9th Cir.1980).

In this case, this Court finds that there were no extraordinary facts or circumstances which made it in the public interest for the Secretary to make his decision to impose the fifty cents per hundredweight deduction without allowing notice and comment. Fed.R.Civ.P. 52.

█ Finding as I have that there were no facts in this case which would bring the Secretary within the "good cause" exception of 5 U.S.C. § 553(b)(B), I conclude that the Secretary did not have good cause for failing to allow notice and comment.

### D. THE CLAIM OF SUBSTANTIAL COMPLIANCE.

█ Acknowledging that there is at least technical violation of the Administrative Procedure Act, the defendants nonetheless attempt to save the deduction by contending that the Secretary took sufficient actions to give the interested parties notice and to allow for and consider their comments. This, they say, renders any lack of literal compliance harmless. The defendants therefore urge that to void the deduction program for violation of the Administrative Procedure Act would elevate form over substance.

In support of this argument, the defendants point out that the question of how to control the spiralling cost of the price support program was extensively discussed in the Congress as part of the debate leading to the enactment of the Omnibus Budget Reconciliation Act. They note that the dairy industry was lobbying actively throughout the debate and had extensive, almost constant access into the legislative process which led to the adoption of this statute.

Further, the defendants note that simultaneously with the publication of the Notice of Determination, the Secretary published the Notice of the Proposed Rule for the collection plan. This Notice specifically invited comments, and allowed a period of 45 days for their reception. 47 Fed.Reg. at 42,112.

Finally, as the Notice of the Final Rule on the collection plan makes clear, the Department received comments, from more than 25,000 sources, and did review them. 47 Fed.Reg. at 53,832. In combination, the defendants contend, these factors establish substantial compliance sufficient to meet the spirit if not the letter of the Administrative Procedure Act.

I find this line of argument unpersuasive. First, the provisions of the Omnibus Act, as that statute was finally adopted, were a late result of discussions in a conference committee. The defendants have produced no evidence that the deduction program was anything more than one possible option under discussion before it emerged from the conference committee. The evidentiary materials show that it was not the proposal favored by the current Administration. There is no showing that discussion had focused on the deduction idea, or that those who are interested in or affected by the deduction had any opportunity to air their views before the provision was signed into law.

Even assuming that there was full discussion in the legislative arena, that was immaterial to the notice and comment requirement as to Secretary's decision to implement the deduction, a decision which occurred in an administrative setting. I know of no authority which suggests that discussion in the legislature is a substitute for comments directed to the relevant administrative agency before it may implement a substantive rule. Manifestly, whatever discussions occurred before the legislature do not establish compliance with 5 U.S.C. § 553.

Second, although comments were invited with respect to the Proposed Rule concerning the collection of the deduction, this opportunity to comment cannot save the Secretary's determination, for two reasons. The Notice of the Proposed Rule specifically stated that the Commodity Credit Corporation was not required by law to publish a notice concerning this rule. This alone was a significant indication to the public that the comment process was form without substance.

Assuming that this announcement does not so undercut the solicitation of comments as to render it meaningless, that solicitation is fatally flawed for a much more serious reason: the very Notice of Proposed Rule which invited comments made clear that these were invited only with respect to the collection plan itself. The Notice indicated unequivocally that the deduction itself was a *fait accompli,* an accomplished fact on which comments were not invited. As the Notice stated:

> [T]he Secretary has determined that the deductions should become effective on December 1, 1982. Comments on whether the dairy collection plan should be implemented in the manner set forth in this proposed rule are invited.

47 Fed.Reg. at 42,112.

The Final Rule shows that the deduction was an accomplished fact from the outset. There is nothing to indicate that anything that was said or that could have been said by way of comment would have swayed the Secretary in his determination to impose the deduction. The language of the Final Rule's Response to Public Comments makes this clear:

> The Department received comments from more than 25,000 sources. Included were a number of petitions containing nearly 23,000 signatures....
>
> The vast majority of the comments were in opposition to the Secretary's determination that effective December 1, 1982, a deduction of 50 cents per hundredweight will be made from the proceeds of the sale of all milk marketed commercially by producers. Comments of this nature, *although not relating to the specific procedures for carrying out the dairy collection plan on which comments were invited,* nevertheless were re-

viewed by the Department. However, the extremely serious surplus production situation and the very substantial governmental expenditures for the purchase and storage of surplus dairy products mandate implementation of the dairy collection plan.

> There were 23 comments received that addressed the procedures for carrying out the dairy collection plan as set forth in the proposed regulations.

47 Fed.Reg. at 53,832. [emphasis added]. Notably, the remainder of the response to the comments, in excess of 48 column inches of small type, is devoted to the twenty-three responsive comments. Of the myriad comments in protest to the Secretary's decision to impose the assessment nothing more is said.[19]

The record is clear. I find that the Secretary set his mind very early on that he would impose the deduction. There were no procedures by which interested persons could have an input into this decision comparable to that which is required by 5 U.S.C. § 553. Accordingly, I find that the public was given no opportunity for meaningful comment on whether the Secretary would impose the fifty cents per hundredweight deduction before he made his decision. Fed.R.Civ.P. 52.

Even assuming that the Secretary was of an open mind after he issued the Notice of Determination of September 24, the cases make clear that the allowance of *post hoc* comment is no substitute for the right to comment on a proposed rule *before* the administrator makes his decision. The purpose of the notice and comment requirement of 5 U.S.C. § 553 is to allow interested parties to voice their views before a rule comes into effect, when there is a greater

---

**19.** Though the plaintiffs and the plaintiffs-intervenors have not had the opportunity to develop a full record on the issue, the evidence which they have produced bears out the clear indication of the Proposed and Final Rules. As Mr. Edward Coughlin, a defense witness, indicated, the decision to implement the deduction was apparently actually made *before* the Omnibus Budget Reconciliation Act was signed into law. Mr. Coughlin sent materials concerning the col-

lection of the deduction to various state dairy officials on September 3. *See* Plaintiffs' Exhibit 2. Mr. Coughlin also testified that on September 17, a full week before he promulgated the Proposed Rule which ostensibly establishes substantial compliance, the Secretary publicly indicated that the Department was committed "full speed ahead" to putting the deduction into effect.

likelihood that the administrator or agency will be receptive to information and argument. In the long run, to permit agencies to resort to *post facto* comment would allow them to negate at will the Congressional decision that notice and the opportunity to comment must precede decision, and would deprive parties of all effective means to enforce the rights granted by this section. *State of New Jersey, supra,* 626 F.2d at 1050 ("Congress specified that notice and an opportunity to comment are to precede rule-making. . . . *[P]ost hoc* comment was not contemplated by the A.P.A. and is generally not consonant with it"); *Sharon Steel Corp., supra,* 597 F.2d at 381 ("after the final rule is issued, the petitioner must come hat-in-hand and run the risk that the decision maker is likely to resist change"); *United States Steel, supra,* 595 F.2d at 214–15; *Maryland v. Environmental Protection Agency,* 530 F.2d 215, 222 (4th Cir.1975), *vacated and remanded on other grounds sub nom. Environmental Protection Agency v. Brown,* 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977); *Wagner Electric Company v. Volpe,* 466 F.2d 1013, 1020 (3d Cir. 1972) ("The short answer to this contention is that Section 4(b) of the Administrative Procedure Act requires notice *before* rule-making, not after"); *City of New York v. Diamond,* 379 F.Supp. 503, 517 (S.D.N.Y. 1974); *Kelly v. United States Department of Interior,* 339 F.Supp. 1095, 1101 (E.D.Cal. 1972) ("We doubt that persons would bother to submit their views or that the Secretary would seriously consider their suggestions

after the regulations are a *fait accompli* ").[20]

▮ The meaning of these authorities is clear. The Secretary's *post hoc* allowance of comments does not cure his failure to provide notice and an opportunity to comment before he made his decision. This is plainly so where the *post hoc* comments were solicited not on the Secretary's decision to implement the deduction, but on his plan for collecting it. *Post hoc* comment on his Notice of Determinations would not have been sufficient; *post hoc* comment on the collection plan plainly cannot save the decision to impose the deduction.

In my view, the Secretary's disregard of the clear requirements of 5 U.S.C. § 553 is much more egregious than the defendants would characterize it. The defendants would have the Court find this to be mere technical non-compliance with the literal rules of the statute, harmless error. I do not agree. I cannot assume that there was no prejudice to the plaintiffs from the Secretary's refusal to provide for notice and comment. Thus, this error cannot be considered harmless. *United States Steel, supra,* 595 F.2d at 215; *cf. Alabama Ass'n of Insurance Agents v. Board of Governors of the Federal Reserve System,* 533 F.2d 224, 236 (5th Cir.1976), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978); *Braniff Airways v. Civil Aeronautics Board,* 379 F.2d 453, 465–67 (D.C.Cir.1967).

In support of their position concerning substantial compliance, the defendants rely

**20.** The few cases which have tolerated *post hoc* comment are clearly distinguishable from the instant situation. Each involves a situation of either legislative or judicial compulsion establishing good cause for dispensing with the normal notice and comment procedures. *American Federation of Government Employees v. Block,* 655 F.2d 1153 (D.C.Cir.1981) (agency which was subject to a mandatory injunction to issue final regulations immediately was permitted to use *post facto* comment); *United States Steel, supra,* note 15 (agency permitted to dispense with pre-promulgation notice and comment procedures to meet congressionally mandated timetable); *Republic Steel, supra,* note 15 (same).

In *Republic Steel* and *United States Steel,* each court rested its decision to validate the

resulting regulations on a finding that the agency had been receptive to *post hoc* comments. *See Republic Steel,* 621 F.2d at 804; *United States Steel,* 605 F.2d at 291. In *American Federation of Government Employees,* the court modified the judgment of the district court, ruling that the regulations issued under injunctive mandate could be only "interim final" rather than permanent final regulations and warning that it would review *post hoc* procedures closely and would demand agency responsiveness.

As noted above, the Secretary was not acting under any mandate, legislative or judicial, which warranted dispensing with the normal notice and comment requirements. Further, the record shows that the Secretary was not receptive to *post hoc* comments.

on *Arlington Oil Mills, Inc. v. Knebel,* 543 F.2d 1092 (5th Cir.1976). Having reviewed that case, I find that it does not support the contention that substantial compliance meets with the requirements of the Administrative Procedure Act. In *Arlington Oil Mills,* there were two announcements of peanut price support differentials. That of March 19, 1976 followed full compliance with the Administrative Procedure Act, but was announced by a general press release and was never actually published in the Federal Register. Subsequently, by an announcement of July 6, 1976, the Secretary rescinded his March 19 decision and imposed new price differentials. There was no notice or comment preceding the July 6 announcement. The district court voided the July 6 differentials, and issued a writ of mandamus ordering the immediate re-implementation of the March 19 differentials. Before the Court of Appeals, the Secretary of Agriculture took the self-effacing position that the March 19 differentials had been void *ab initio* for want of publication in the Federal Register. Noting that all of the parties involved in the litigation had actual knowledge of the March 19 announcement, the court rejected this argument, ruling that the March 19 differentials were valid, but also concluded that it was improper to mandate the re-implementation of these differentials. The court therefore vacated the district court's writ of mandamus and remanded to the Secretary for the establishment of new differentials upon compliance with the Administrative Procedure Act. The court's discussion of the significance of non-publication shows that it was dealing with a violation of the Administrative Procedure Act far less serious than that found in the instant case:

In *United States v. Aaron,* 310 F.2d 341, 348 (2d Cir.1962), the United States Court of Appeals for the Second Circuit rejected a similar contention, holding that the failure of APA required *Federal Register* publication is without consequence to a person having actual knowledge of the agency actions. Here the industry had actual notice of the Department's February 23, 1976 meeting to discuss the adoption of 1976 peanut price support differentials. 5 U.S.C. § 553(b). No contention is made that any person was not given a full, fair opportunity to participate in the rule-making process 5 U.S.C. § 553(c). Indeed, everyone who is a party here well knew the content of the March 19 announcement.
543 F.2d 1099–1100.

Thus, at most *Arlington Oil Mills* indicates that an administrative action may be upheld absent final publication in the Federal Register where the affected parties have had notice and full opportunity to make their comments to and have them considered by the administrator *before* he renders his decision. This is clearly distinguishable from the present situation, and *Arlington Oil Mills* does not suggest that the Secretary's action herein can be condoned.

Based on the evidence presented by the parties, I conclude that the Secretary's actions imposing the fifty cents per hundredweight deduction requirement involve a serious violation of the Administrative Procedure Act, and cannot be considered to show substantial compliance with that Act.

## E. THE VALIDITY OF THE DEDUCTION.

To review this Court's conclusions with respect to the merits of the case:

a) The Secretary's "determination" imposing the deduction was substantive rule-making, and thus came within the purview of 5 U.S.C. § 553.

b) The Department of Agriculture has waived the "benefits" exception, and thus cannot take advantage of the exemption of 5 U.S.C. § 553(a)(2).

c) There was no "good cause" which would excuse the Secretary from the notice and comment requirements of 5 U.S.C. § 553(b)(B).

d) The Secretary's actions in imposing the deduction do not constitute "substantial compliance" with the requirements of the Administrative Procedure Act, but are, on the contrary, a serious violation of that Act.

This brings the discussion to the ultimate question on the merits: is the Secretary's action void for want of compliance with the Administrative Procedure Act?

For the sake of clarity, I reiterate one principle which runs throughout this discussion. No criticism of the Secretary's action made in this opinion goes at all to the merits of the deduction program which Congress authorized and which the Secretary sought to implement. It is not the office of this Court to pass on the wisdom of any particular plan for bringing the burgeoning cost of the milk price support program under control. These matters are left to the Congress and to the Secretary as the authorized administrative agent of the Congress. The sole issue before this Court is whether or not the Secretary violated the requirements of the Administrative Procedure Act.

■ The various findings which I have made in canvassing the merits of the plaintiffs' case compel me to the conclusion that the Secretary has violated the Administrative Procedure Act. As such, the Secretary's imposition of the assessment is a nullity. It is a void act. It has no force of law. *National Labor Relations Board v. Wyman-Gordon Company,* 394 U.S. 759, 763–66, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969) (plurality opinion); *Buschmann v. Schweiker,* 676 F.2d 352 (9th Cir.1982); *Mobil Oil Corporation v. Department of Energy,* 610 F.2d 796, 804 (Em.App.1979); *United States Steel Corporation, supra,* 595 F.2d at 210; *National Tour Brokers Association v. United States,* 591 F.2d 896 (D.C.Cir. 1978); *Shell Oil Company v. Federal Energy Administration,* 574 F.2d 512 (Em.App. 1978); *Joseph v. U.S. Civil Service Commission,* 554 F.2d 1140 (D.C.Cir.1977); *Anderson v. Butz,* 550 F.2d 459, 462 (9th Cir.1977); *Pickus v. United States,* 507 F.2d 1107 (D.C. Cir.1975); *United States v. Finley Coal Company,* 493 F.2d 285 (6th Cir.), *cert. denied,* 419 U.S. 1089, 95 S.Ct. 679, 42 L.Ed.2d 681 (1974); *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478 (2d Cir.1972); *Wagner Electric Company v. Volpe, supra; Texaco, Inc. v. Federal Power Commission, supra,* 412 F.2d at 745; *Hotch v. United States,* 212 F.2d 280 (9th Cir.1954); *Carter v. Blum,* 493 F.Supp. 368, 372 (S.D.N.Y.1980); *Dow Chemical Company v. Consumer Products Safety Commission,* 459 F.Supp. 378, 390–91 (W.D.La.1978); *Hall v. Equal Employment Opportunity Commission,* 456 F.Supp. 695, 701 (N.D.Cal.1978); *Shell Oil Co. v. Federal Energy Administration,* 440 F.Supp. 876 (D.Del.1977); *Percy v. Brennan,* 384 F.Supp. 800 (S.D.N.Y.1974); *City of New York v. Diamond, supra; Kelly v. Department of Interior, supra; Pharmaceutical Manufacturers Association v. Finch,* 307 F.Supp. 858 (D.Del.1970); *National Motor Freight Traffic Association, Inc. v. United States,* 268 F.Supp. 90 (D.D.C.1967) (three judge court), *aff'd per curiam,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968); *Seaboard World Airlines, Inc. v. Gronouski,* 230 F.Supp. 44 (D.D.C.1964); *Graham v. Lawrimore,* 185 F.Supp. 761 (E.D.S.C.1960), *aff'd* 287 F.2d 207 (4th Cir.1961).

This conclusion comes after a two-day hearing. That hearing did not amount to a full trial on the merits, but it involved a thorough presentation of evidence by the defendants as well as by the other parties appearing before the Court. I believe that this hearing was quite sufficient to establish the salient facts of this case. While a full trial might amplify, clarify, or modify some of the matters which have been presented to the Court, I do not believe that it would alter the conclusion that the Secretary's imposition of this deduction violated the Administrative Procedure Act. With due respect to the defendants, I believe that the plaintiffs have already presented sufficient evidence to allow them to prevail. Further, this evidence is of such a conclusive nature (being primarily the official documents published by the Secretary), and the rules of law with respect to these issues, although technical, are clear enough, that I regard the plaintiff's case on the merits as essentially unassailable.

The deduction imposed by the Secretary is void.

## IV.

 With respect to the four factors, the flexible interplay of which this Court must weigh in deciding plaintiffs' Motion for a Preliminary Injunction, the factor which has occupied the parties' attention most is the question of the likelihood of irreparable injury to the plaintiffs.

The defendants contend that there will be no irreparable injury to the plaintiffs from the imposition of the deduction, because the Commodity Credit Corporation, supported as it is by the United States Treasury, will stand ready to refund any deductions which are illegally collected during the resolution of this controversy. The defendants thus characterize the only possible harm to the plaintiffs as a temporary loss of income, which the defendants insist cannot be characterized as an irreparable injury. *See Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1202 (9th Cir.1980); *North Carolina State Ports Authority v. Dart Containerline Corp.,* 592 F.2d 749 (4th Cir.1979); *Morgan v. Fletcher,* 518 F.2d 236, 239 (5th Cir.1975); *Warr v. Butz,* 379 F.Supp. 268 (D.S.C.1974).[21]

While the authorities on which the defendants rely in this regard are all well reasoned, I find that they are inapplicable because the possible injury which confronts the plaintiffs goes beyond a loss of income. As the evidence in this case shows, modern farming is a business involving highly sophisticated financial arrangements. Each of the five dairy farmers who testified before this Court stated that he was under a heavy burden of debt. Periodic refinancing is an experience which each of these men face, as do each of the six dairy farmers whose affidavits have been submitted to this Court. Doubtlessly, there are few farmers in this nation who could operate their farms without credit arrangements.

Those farmers who have testified in Court have indicated emphatically that the drain on their cash flow which will follow from the imposition of the Secretary's fifty cents per hundredweight deduction will cause more than a loss of income. For many it will require refinancing arrangements, the forced sale of non-liquid assets, and quite possibly bankruptcy. This same situation is shown by the affidavits of the individual farmers and by those of the various officers of dairy cooperatives and other marketing associations which have been filed with this Court.

In two instances, the potentially disastrous impact of the deduction requirement is brought out in stark terms. Fred Hammond, a young dairy farmer who appeared as a witness for the plaintiffs-intervenors, testified that he has been in the dairy farming business for four years, trying to make a career for himself. In that time, partly because of adverse conditions in the market, he has had a net loss averaging $8,500 per year. He is making monthly payments of approximately $3,200 to service a total debt of some $250,000. He testified that a fifty cents per hundredweight deduction, which would cost him approximately $650 per month, would put such a strain on his cash flow situation that the only way he could survive financially would be to expand his herd. This he cannot do because there simply is no more money available for him to borrow. He concluded that if this deduction is imposed, he would be very quickly forced into bankruptcy.

Similarly, the Court has before it the affidavit of B.K. Sheffield, a dairy farmer in Jacksonville, Florida. Mr. Sheffield reports that he has filed in the United States Bankruptcy Court for the Middle District of

---

**21.** I would emphasize that the rule in these cases is that loss of income is not *usually* considered irreparable injury. The Supreme Court, in *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974), quoted from *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958). In the *Virginia Petroleum Job-* *bers* case, the Court of Appeals stated that loss of revenue usually would not constitute irreparable injury, but closed the passage with the caveat "But injury held insufficient to justify a stay in one case may well be sufficient to justify it in another where the applicant has demonstrated a higher probability of success on the merits." 259 F.2d at 925.

Florida, to reorganize under Chapter Eleven of the Bankruptcy Code. He states that if the deduction is imposed, he will be forced to go out of business.

The evidentiary materials which the Court has received present many other examples of persons in the dairy farming industry who report that the Secretary's deduction requirement will force them out of business if it is not enjoined. Nor is the Court unaware of the general state of dairy farming in the nation as a whole. These are very bleak economic times for these people.

The defendants have pointed out that many of the witnesses who have testified are persons who report substantial net worth. Based on an examination of the financial statements of the dairy farmers who have appeared as witnesses for the plaintiffs, the Court does not disagree. Net worth, however, is an inadequate measure for determining the likely impact of the Secretary's deduction. The bulk of the assets which make up the farmers' net worth are non-liquid. Further, given the depressed state of the general economy, for these farmers to liquidate large blocks of their assets in order to meet the immediate demands of the Secretary's deduction would be a very costly matter. It would probably produce cash returns far below the stated "paper" value of their capital assets.

Further, given the necessity of on-going financing mentioned above, the results of the deduction will doubtlessly include a tightening of the credit arrangements which these farmers must maintain. Aware of the Secretary of Agriculture's intention to impose the deduction of fifty cents per hundredweight and of the drain on farmers' cash flow which this deduction will cause, investors will doubtlessly adjust their credit terms with farmers. Given the tight credit situations which many dairy farmers already face, such an anticipatory adjustment in credit could have sweeping and precipitous consequences.

Based on a careful consideration of the evidence which has been presented, this Court cannot accept the defendants' contention that the likely harm which the plaintiffs face from the deduction requirement is limited to a loss of income.

This Court finds that the imposition of the fifty cents per hundredweight deduction will have the likely effect of placing severe and immediate strains on dairy farmers' cash flow situations. The Court further finds that the imposition of the deductions will have the likely effect of forcing dairy farmers to liquidate capital assets under forced and disadvantageous circumstances. The Court further finds that the imposition of the deduction will have the likely effect of causing creditors to tighten their credit arrangements with dairy farmers. From the evidence and from the above-stated facts, this Court finds that the imposition of this assessment will have the likely effect of forcing many dairy farmers out of business. Fed.R.Civ.P. 52.

These are injuries which go beyond those which will be compensated by the refunding of the deduction which the defendants seek to collect from the dairy farmers. They are of a sort which may well be incalculable, and they are of a sort which will not be recompensed through awards of money damages, even assuming that such awards are as a practical matter available. Particularly in view of the very strong showing that the plaintiffs have made with respect to the merits of this controversy, they are of the sort which courts have found to be irreparable and warranting injunctive relief to maintain the *status quo ante pendente litum*. *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495 (4th Cir.1981); *Blackwelder Furniture Company, supra*, 550 F.2d at 196–97; *New York Pathological and X-Ray Laboratories, Inc. v. Immigration and Naturalization Service*, 523 F.2d 79 (2d Cir.1975); *International Controls Corporation v. Vesco*, 490 F.2d 1334, 1344 (2d Cir. 1974); *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1205 (2d Cir.1970); *Amoco Oil Company v. Zarb*, 402 F.Supp. 1001 (D.D.C.1975); *Assaf v. University of Texas System*, 399 F.Supp. 1245, 1251 (S.D. Tex.1975); *American Federation of Govern-*

ment Employees, Local 1858 v. Callaway, 398 F.Supp. 176, 194–95 (N.D.Ala.1975); *Brennan Petroleum Products Co., Inc. v. Pasco Petroleum Co., Inc.,* 373 F.Supp. 1312, 1316 (D.Ariz.1974); *Bucks County Cable TV, Inc. v. United States,* 299 F.Supp. 1325 (E.D.Pa.1969).

Accordingly, I conclude that the plaintiffs have shown a sufficient likelihood of irreparable harm to warrant this Court to exercise its equitable powers to enjoin the collection of the fifty cents per hundredweight deduction pending a final resolution of this controversy on the merits.

### V.

■ With respect to the potential harm which the defendants will suffer from the issuance of a preliminary injunction, the defendants contend that, as a practical matter, any part of the deduction which is not collected as it becomes due will be lost to the United States government.

However factually sound the government's position is, it rests on two assumptions which this Court does not endorse. First, the government assumes that the harm to the government of losing these revenues is of a comparable severity to the harm to the dairy farmers of having the deduction collected. While I agree with the government that the inconvenience, cost, and impracticability of trying to collect past due deduction may be great, there is no suggestion that the United States government will go bankrupt if this revenue is not collected. Congress, after all, authorized only a discretionary deduction. In balancing the potential harm to the defendants if they are enjoined against the potential harm to the plaintiffs from a denial of an injunction, I find that the harm the plaintiffs are likely to suffer is far greater than that which will fall on the defendants.

Secondly, and more importantly, the defendants have assumed in their argument that they have a right to these funds, that they will prevail on the merits and prove that the deduction requirement was imposed in a valid and lawful manner. In view of the very strong showing which the plaintiffs have made on the merits of this controversy, I cannot accept this assumption.

If the deduction requirement was not imposed in a valid and lawful manner—and I hold it was not—then what is the defendants' right to these collections? It is patently clear that they have no right. And it follows that if they have no right to these collections, the defendants cannot claim any legally cognizable injury in being deprived of them.

This Court finds that no irreparable injury will come to the defendants from an injunction of the collection of the fifty cents per hundredweight deduction pending a final resolution of this matter. Fed.R. Civ.P. 52.

Accordingly, I conclude that the balance of harms likely to fall upon the plaintiffs from a refusal to enjoin this deduction requirement against the harms likely to fall on the defendants from the granting of such an injunction favors its issuance.

### VI.

■ The final factor which this Court is to examine is the public interest. The defendants urge that the public interest calls for the Court to refrain from the issuance of an injunction. I note, however, that the facts to which the defendants point in support of this contention are essentially identical to those to which they point in contending that they will be injured if an injunction issues: the issuance of an injunction will cost the government lost revenues.

However this may be, there is a longer term aspect of the public interest which the defendants' position overlooks. Modern government intrudes on the lives of the average citizen to a degree which our Founding Fathers might well consider abominable. The notion of price support programs and assessments to defray the costs of such programs might strike the founders as unwarrantable intrusions on the private sector. While modern society has found that such governmental entry into traditionally private affairs is warrant-

ed and indeed desirable, the underlying principles of our system of government remain the same. Two of these principles bear heavily on this matter.

The first of these is that ours is a government of laws and not of men. The defendants concede that this is true, acknowledging that the government should be held to the highest of legal standards. In this instance, the law relevant to the Secretary's decision to impose the fifty cent deduction is the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Specifically, it is the notice-and-comment provisions of 5 U.S.C. § 553, which prescribes the Secretary's course in making his decision. I willingly concede that the great surplus milk production is a serious problem, and that the more than two billion dollars per year now spent on the milk price support program could be better spent on other matters. Further, as stated above, I render no opinion as to the wisdom of this particular program of trying to bring the surplus within manageable bounds. These facts notwithstanding, the need to restrain the government within the bounds of law remains. Even the most beneficent program is tainted where it is imposed in a manner that violates the law. It is the duty of the Secretary to insure that the laws are faithfully observed. In this case, I believe firmly that the public interest will be disserved by condoning the Secretary's action which stands outside the law. That same public interest is far better served by holding the Secretary to the strict observance of the law.

The second principle is intimately related to the first. Ours is, and if it keeps faith with itself, it must be a government in which the people have a voice. There are admittedly occasions in which the full rights of public participation must be dispensed with because of exigent circumstances or more compelling considerations. A review of the record here, as indicated above, shows no factor which precluded open public participation in the decision on whether to impose this deduction requirement.

In the 1970 supplement to his Administrative Law Treatise, Professor Kenneth Culp Davis stated emphatically: "Rule-Making Procedure Is One Of The Greatest Inventions of Modern Government." (K. Davis, Administrative Law Treatise § 6.15 (Supp.1970)). This is true only where the rule-making process is observed, so that the administrator allows those who are interested in or will be affected by his action to make their comments before he makes his decision.

In closing argument, counsel for the plaintiffs states that what the plaintiffs seek is only an opportunity to be heard by the Secretary before he makes his decision. Counsel continued, saying that if, after hearing the interested parties, the Secretary concludes that his course will be to impose the deduction, then so be it. The plaintiffs will have had the relief they seek: the right to be heard and to participate in the decision-making process. With this idea, this Court agrees: the plaintiffs' right is the right to be heard. This is the plaintiffs' right. It is the right of all citizens. The public interest is not disserved by upholding this right. *Assaf v. University of Texas System,* 399 F.Supp. 1245, 1251 (S.D. Tex.1975); *Duke City Lumber Company v. Butz,* 382 F.Supp. 362, 369 (D.D.C.1974) *aff'd in part,* 539 F.2d 220 (D.C.Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977); *Kelly v. United States Department of Interior,* 339 F.Supp. 1095 (E.D.Cal.1972).

Finally, I would comment on one assertion that the defendants have advanced concerning the public interest. In their memorandum to this Court, the defendants state: "A preliminary injunction will quite obviously preclude the Secretary from taking action to reduce production, and from carrying out the intent of Congress." (Defendants' Memorandum at 20). I disagree. An injunction will not preclude the Secretary from acting. It will preclude him only from collecting a deduction which was imposed by a process violating the law. The Secretary remains free to impose a deduction. The injunction requires only that he observe the requirements of the Administrative Procedure Act.

In view of the factors discussed, I find that the public interest favors enjoining the collection of the fifty cent per hundredweight deduction. Fed.R.Civ.P. 52.

## VII.

Reviewing this court's findings with respect to each of the four factors to be considered in determining whether an injunction should issue, it is apparent that the plaintiffs have met their burden on each factor:

1) The plaintiffs have made a strong showing that they will prevail on the merits of this controversy;

2) The plaintiffs have shown that it is likely that they will suffer irreparable harm if this injunction does not issue;

3) The defendants will not suffer undue harm from the issuance of an injunction;

4) The public interest favors the issuance of an injunction.

Accordingly, I conclude that a preliminary injunction should issue, enjoining the defendants from collecting the deduction of fifty cents per hundredweight which the Secretary imposed by his Notice of Determinations of September 24, 1982.

A final consideration warrants this Court's attention. Counsel for the Associated Milk Producers, Inc., appearing *amicus curiae* has argued eloquently and forcefully that even if the Court should find that the plaintiffs are legally entitled to an injunction, the Court should stay its enforcement. Counsel has warned that if this Court enjoins the collection of the fifty cent deduction, and the decision is later reversed, the result will be chaos. The government will seek the collection of monies due during the period during which the injunction has run, and the various milk processors to whom the government looks for the initial withholding of these monies will be put in an unbearable position. He urges that even during the pendency of any appeal, the

processors face a serious and deleterious situation. Fearing that this Court will be over-ruled, some will seek to withhold the fifty cents per hundredweight from milk producers while others will not. Milk producers anxious to maximize the return they receive from their milk will refuse to deal with processors who try to withhold these monies, producing disruptive shifts in milk marketing and exacerbating the problems processors will face if the injunction is later dissolved.[22]

I am not unmoved by the concerns expressed by counsel for the *amicus curiae*. Counsel has performed his office well in bringing this matter to the Court's attention. I have thought long and hard over these concerns, and indeed, if I were not firmly convinced that the case which the plaintiffs have made on the merits is so strong as to virtually foreclose the possibility of refutation, I would heed counsel's suggestion. After thorough consideration of the question on the merits, however, I am convinced that the Secretary's action was a violation of the Administrative Procedure Act, and his determination that the deduction should be imposed is therefore null and void. From this it follows that the plaintiffs have a legal right to have the collection of the deduction enjoined. Further, I am gravely concerned that harm will follow from any collection of the fifty cent deduction if the Secretary is allowed to proceed. Plaintiffs will suffer irreparable injury. On careful reflection, I believe that it would be a denial of justice for this Court to declare plaintiffs entitled to relief while rendering that relief ineffective.

Accordingly, a preliminary injunction will issue, enjoining the defendant from implementing the Secretary's determination to impose a fifty cent per hundredweight deduction on the commercial sale of milk announced in the Notice of Determination of September 24, 1982 and from carrying out

---

**22.** This is the position which counsel for the Associated Milk Producers, Incorporated has advanced. The other *amici curiae,* the North Carolina Farm Bureau Federation and the State of Georgia, have joined the plaintiffs and the plaintiffs-intervenors in urging that the Court make any injunction fully effective immediately.

any regulation implementing the determination.[23]

An appropriate Order will be entered.

IT IS SO ORDERED.

---

**23.** It has come to the Court's attention that the Commodity Credit Corporation has published a Notice of Proposed Rules concerning the implementation of the second fifty cent per hundredweight deduction. 42 Fed.Reg. 56,500 (Dec. 17, 1982). It appears from language used in the Summary of the Proposed Rule that the Secretary has not yet announced whether this deduction requirement will be imposed.