Julio M. MALDONADO, et al.,
Plaintiffs, Appellants,

v.

John R. BLOCK, et al.,
Defendants, Appellees.

No. 85–1092.

United States Court of Appeals,
First Circuit.

Argued June 4, 1985.

Decided Aug. 7, 1985.

Wilfredo A. Geigel, Miramar, P.R., for plaintiffs, appellants.

Arthur R. Goldberg, Civ. Div., Dept. of Justice, Washington, D.C., with whom Stephen E. Hart, Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., and Daniel Lopez Romo, U.S. Atty., Hato Rey, P.R., were on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, DAVIS * and TORRUELLA, Circuit Judges.

DAVIS, Circuit Judge.

Julio M. Maldonado and seven other dairy farmers in Puerto Rico (collectively referred to as Maldonado) appeal from a decision of the United States District Court for the District of Puerto Rico entering summary judgment in favor of John R. Block, the Secretary of Agriculture (Secretary).[1] At issue is whether the Omnibus Budget Reconciliation Act of 1982 (Budget Act), Pub.L. No. 97–253, 96 Stat. 763, required Puerto Rican farmers to deduct one dollar per hundredweight of milk sold commercially and remit it to the Government to help finance the Department of Agriculture's milk price support program. Many questions relating to the constitutionality of this statute and the Secretary's authority to promulgate regulations under it have been considered elsewhere.[2] Those are not before us. Maldonado raises only legal points special to Puerto Rico and its place in the statutory scheme. Summary judgment was appropriate because the only issues are legal, and all relevant factual disputes were assumed in appellants' favor.

I.

Under § 401 of the Agriculture Act of 1949, as amended, 7 U.S.C. § 1421(a) (1982), the Secretary has the authority to support the price of agricultural products (as specified elsewhere in the statute) through the Commodity Credit Corporation (CCC), a Government corporation within the Department of Agriculture. Since the 1950's, Congress has authorized the Secretary to support the price of milk by purchasing (through the CCC) dairy products such as butter, cheese and dry milk. Id., § 1446(c). The purpose of this program was to drain off the excess supply of milk and to support milk prices by guaranteeing an open market for dairy farmers. The program also increased the farmers' incentive to produce since the program guaranteed a floor on the price of milk. The result was that, as production expanded, the Government's expenditures for and supplies of surplus dairy products automatically increased in dramatic fashion.

In response to this ballooning of the Government's support of the dairy industry, Congress in the 1982 Budget Act amended the Agriculture Act to authorize the Secretary to deduct specified amounts from the price farmers received on commercially sold milk. Congress mandated that the Secretary use the money to support the CCC's purchases. Codified at 7 U.S.C. § 1446(d) (1982) (amended 1983), the program provided for two separate deductions of 50¢ per hundredweight from the dairy farmers' sales of milk on the commercial market. The first 50¢ deduction, authorized for the period October 1, 1982 through September 30, 1985, applied during any fiscal year in which the Secretary estimated that the CCC's purchases during that year would exceed 5 billion pounds of milk equivalent. 7 U.S.C. § 1446(d)(2). The second 50¢ deduction was authorized from April 1, 1983 through September 30,

---

* Of the Federal Circuit, sitting by designation.

1. The district court entered summary judgment based on the Report and Recommendation of its Magistrate. Maldonado originally sought to represent all Puerto Rican dairy farmers, but the district court never certified the class.

2. See, e.g., South Carolina ex rel. Tindal v. Block, 717 F.2d 874 (4th Cir.1983), cert. denied, ——

U.S. ——, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984); Mulroy v. Block, 569 F.Supp. 256 and 574 F.Supp. 194 (N.D.N.Y.1983), aff'd per curiam, 736 F.2d 56 (2d Cir.1984); Mandel v. Block, 573 F.Supp. 1522 (S.D.N.Y.1983); National Farmers' Organization, Inc. v. Block, 561 F.Supp. 1201 (E.D.Wis.1983).

1985, with the proviso that this deduction should be refunded to dairy farmers who reduced their commercial sales according to a specified formula. *Id.*, § 1446(d)(3). The Budget Act also· set the price level at $13.10 per hunderweight during fiscal years 1983 and 1984 for milk containing 3.67 percent milkfat. *Id.*, § 1446(d)(1)(A).

After overcoming legal obstacles,[3] the Secretary promulgated regulations implementing both deductions. On March 17, 1983, the Secretary published regulations implementing the first deduction effective April 16, 1983 through September 30, 1984. 48 Fed.Reg. 11,253. On May 31, 1983, the Secretary published regulations implementing the second deduction, effective August 1, 1983 through September 1, 1984. 48 Fed.Reg. 24,085. The Secretary began these deduction programs as planned.

In late 1983, Congress again amended the Agriculture Act in the Dairy Production Stabilization Act of 1983 (the Dairy Act), Pub.L. No. 98–180, 97 Stat. 1128. The Dairy Act amended 7 U.S.C. § 1446(d) in several important ways. First, Congress lowered the price at which milk containing 3.67 percent milkfat would be supported to $12.60 per hundredweight. 7 U.S.C. § 1446(d)(1) (Supp. I 1983). Second, the effective dates of the first deduction were changed, and the Secretary's authority for this program under the Dairy Act was made to expire on March 31, 1985. *Id.*, § 1446(d)(2)(A)(i). In the same paragraph, Congress specifically provided that the Dairy Act operated prospectively and did not displace any regulations promulgated by the Secretary under the Budget Act: "Enactment of the [Dairy Act] shall not affect in any manner the collection or enforcement of any deduction from the price of milk previously implemented by the Secretary under this subsection." *Id.*, § 1446(d)(2)(A)(ii). Finally, Congress substituted for the second deduction a new program in which dairy farmers may contract with the Secretary to lower their com-

mercial production in exchange for cash subsidies. *Id.*, § 1446(d)(3). The second deduction thus lapsed on November 30, 1983, the day the Dairy Act entered into effect.

## II.

Maldonado brought this suit in March 1983 soon after the Secretary announced the first deduction. He contends that Congress never intended the deductions to apply to Puerto Rican dairy farmers. Maldonado asserts, and the Secretary apparently agrees for this case, that the Puerto Rican dairy farmers do not sell their milk on the mainland; that Puerto Rico has its own system for controlling its dairy market under which excess milk goes to INDULAC, a Puerto Rican government agency; and Puerto Rican milk is below the 3.67 percent milkfat level specified in 7 U.S.C. § 1446(d)(1)(A) (1982) for support eligibility. In a word, Maldonado contends that Puerto Rican dairy farmers operate under a system separate and apart from that established in the Budget Act.

The Secretary counters by pointing out that the CCC is prepared to purchase Puerto Rican milk should it meet the Secretary's standards; the statute does not specifically or impliedly exclude Puerto Rico; and the Secretary is not authorized to exclude either particular groups of farmers or certain regions of the country by regulation. The Government relies heavily on the opinion in *Mandel v. Block, supra,* in which Judge Lasker stated that "the Secretary would be exceeding his powers by implementing the deductions on a regional or individual producer basis." 573 F.Supp. at 1526.

■ We agree with the Government that Congress intended the deductions authorized by the Budget Act to include Puerto Rico. Congress' purpose in adopting the Agriculture Act and subsequent modifications was to insure "[t]he· production and use of abundant supplies of high quality

---

**3.** The United States District Court for the District of South Carolina enjoined an initial effort to implement the regulations because of proce-

dural defects. *South Carolina ex rel. Patrick v. Block,* 558 F.Supp. 1004 (D.S.C.1983).

milk and dairy products [which] are essential to the health and general welfare of the Nation." 7 U.S.C. § 1446b (1982). Congress therefore did not target its dairy policy to one particular region of the country; indeed, Congress' emphasis on "production *and use*" [emphasis added] of dairy products indicates that it did not even consider that the statute's primary impact would necessarily be on the high milk-producing areas. Furthermore, Congress clearly intended that Puerto Rico be included in any provision of the Agriculture Act which applies to the nation as a whole. Congress stated that, for purposes of that statute, "The term 'State' includes ... Puerto Rico." *Id.*, § 1301(a)(6).[4] At several points in § 1446(d), Congress referred to the roles of the states in this statutory framework, and did not exclude Puerto Rico. *See, e.g., Id.*, § 1446(d)(7)(C) ("In carrying out this subsection, the Secretary may use ... administrators of State milk marketing programs"). The only conclusion reasonably to be drawn from the face of the statute is that Congress intended the Budget Act to include Puerto Rican milk.

Maldonado points out that the Puerto Rican farmers do not produce milk with 3.67 percent milkfat, and thus concludes they do not fit within the statutory scheme. The statute, however, provides no basis for distinguishing between different types of milk for purposes of the deduction system. The provision of the Budget Act authorizing the deductions applied to "all milk marketed commercially by producers." *Id.*, § 1446(d)(2). Moreover, Puerto Rican farmers cannot say that they were totally separate from the price support program since, absent the Government purchases, excess milk from the states could be expected to compete in Puerto Rico with the local product. *See Mandel v. Block,* 573 F.Supp. at 1526.

Maldonado next points to the Dairy Production Stabilization Act of 1983, which also amended much of § 1446(d), and notes that there Congress did specifically exclude Puerto Rico from its terms. The Dairy Act revised, *inter alia*, 7 U.S.C. § 1446(d)(2)(A)(i) and (ii) (Supp. I 1983), regarding the first 50¢ deduction, by making it expressly applicable to "all milk produced in the United States." Then, amending 7 U.S.C. § 1446(d)(6), Congress made clear that, for purposes of the 1983 amendments, "United States" means only the forty-eight contiguous states. *See also* S.Rep. No. 163, 98th Cong., 1st Sess. (1983), *reprinted in* 1983 U.S.Code Cong. & Ad.News 1658, 1692–93 (The references to the "United States" in § 1446(d)(2), (3) refer to the forty-eight contiguous states only."). Accordingly, in 1983 when the Dairy Act took effect, the Secretary ceased to collect the deduction from Puerto Rican dairy farmers.

That the terms and legislative history of the 1983 Dairy Act withdrew Puerto Rico from the coverage of § 1446(d) does not mean that the Secretary was incorrect in collecting the deductions under the previous 1982 program. As noted *supra,* Congress enacted the Dairy Act's amendment to § 1446(d)(2)(A)(ii) (Supp. I 1983) to make clear that the Dairy Act should be read prospectively and would "not affect in any manner the collection or enforcement of any deduction ... previously implemented by the Secretary." Our reading of Congress' action is that it decided after passage of the 1982 Budget Act to exempt Puerto Rico from the milk price support program, and it took the opportunity to do so in the Dairy Act. This is, therefore, not a situation in which Congress sought to clarify its earlier action,[5] as Maldonado asserts, but rather Congress reversed, pro-

---

**4.** 7 U.S.C. § 1428(j) (1982) provides that the definitions contained in the Agricultural Adjustment Act of 1938 apply to the Agriculture Act of 1949. The definition in 7 U.S.C. § 1301(a)(6) is within the 1938 Act, and accordingly the now challenged provisions of the 1949 Act and the 1982 Budget Act treat Puerto Rico as a "State."

**5.** The legislative history of amendatory statutes can be persuasive evidence of Congress' intent in the original statute if the meaning of the original statute is obscure or ambiguous. *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980).

spectively only, its earlier decision to include Puerto Rico within the program.[6]

### III.

Maldonado also urges that inclusion of Puerto Rico's dairy farmers in the Secretary's deduction program violated those farmers' right to due process. In a nutshell, Maldonado's claim is that "Puerto Rican dairy farmers qualify for a special classification exempting them from these regulatory measures." App.Br. at 11. But Congress does not abridge the due process clause when it imposes regulations on all similarly situated individuals, even if all members of the class do not benefit from the overall regulatory scheme equally. In *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271–72, 99 S.Ct. 2282, 2291–93, 60 L.Ed.2d 870 (1979), the Supreme Court noted:

> Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern.

That statement applies precisely to this case. Congress imposed a rational regulation on all dairy farmers nationwide. It did not violate the Constitution when it failed in 1982 to provide for differences between the Puerto Rican members of that class and others.

*Affirmed.*

---

**6.** Because the inclusion of Puerto Rico under the earlier 1982 dairy support legislation is so clear, it is important to recall that the Supreme Court has often warned that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consum-* *er Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 117, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980); *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960).